Statement of Facts.

[No. 3,736.]

GEORGE F. BRAGG *v.* E. R. SHAIN, THE FIRST CONGREGATIONAL SOCIETY OF SAN FRAN-CISCO, T. D. TOBIN AND B. BONNET.

| 49 | 131 |
|----|-----|
| 91 | 233 |
| 49 | 131 |
| 110 | 665 |
| 49 | 131 |
| 114 | 626 |
| 49 | 131 |
| e146 | 522 |

LIABILITY OF SURETY FOR A CONTRACTOR.—Where a contractor agrees with the owner to erect for him a building and furnish the materials and deliver the same discharged of all liens, and by the terms of the contract the owner is to pay seventy-five per cent. of the contract price each month as the work progresses, and the other twenty-five per cent. when the work is completed, and a third person becomes surety for the contractor; if the owner, during the progress of the work, pays the contractor more than the seventy-five per cent., the surety is discharged from his liability.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The case was thus: On the 5th day of November, 1870, the First Congregational Society of San Francisco entered into a contract with E. R. Shain, for the erection of a church edifice. The edifice was to be completed by the 1st day of February, 1871. The Society was to pay Shain for the work and materials the sum of $31,850, " payments to be made in installments on the first day of every month to the amount of seventy-five (75) per cent. on the value of the materials furnished and the work done and certified to by the said architects, and the remainder of the said sum, above the value of seventy-five (75) per cent. on the said value of the said works, when the whole of the said materials and the said works have been certified to have been completed according to the said plans and specifications, conditions and stipulations, to the satisfaction of said architects."

At the time of the execution of the contract, B. Bonnet executed an agreement "for the faithful performance" thereof on the part of Shain. After the work had been commenced, the architects reported that the excavation for the foundation must be ten feet deeper than the contract called for, in order to obtain solid matter for the church to rest on. The contractor performed the extra work at a cost of $5,095. The Society paid Shain for the extra work. During the progress of the work the Society also paid Shain up-

on the contract the sum of $27,766 63, being more than the seventy-five per cent. provided for in the contract. While the edifice was being erected, the plaintiff Bragg, and the defendants Bonnet and Tobin severally furnished Shain materials which were used in the erection of the building.

After the completion of the same, Shain having failed to pay them, they severally filed leins on the same, under the Act of March 30, 1868, "for securing liens of mechanics and others." The defendants Bonnet and Tobin were made such, as lien holders. On the trial the Court found that the Society owed Shain, upon the contract, the sum of $4,183 97. The Court also found that Shain was indebted to the plaintiff in the sum of $944, and to defendant Tobin in the sum of $3,444 45, and to defendant Bonnet in the sum of $4,100, for the materials they had severally furnished.

The Court enforced the liens of Tobin and the plaintiff, for the sums due them, amounting to $4,388 45, being $204 48 more than the Society owed Shain on the contract. The Court gave defendant Bonnet judgment against Shain for the sum Shain owed him, but refused to enforce Bonnet's lien because he had, as surety for Shain, contracted that Shain should deliver the building free from all liens, and the liens of Tobin and Bragg were $4,388 45, being $388 45 more than Shain owed Bonnet.

By this it will be seen that the Court held Bonnet liable on his undertaking to the Society as surety for Shain, and set off the amount due him against the liens that were enforced, so as to relieve the Society from that amount. The judgment, as rendered, compelled the Society to pay the lien holders a sum which, added to the amount it had paid Shain on the contract, amounted to more than the Society had contracted to pay Shain. On the trial, defendant Bonnet asked the Court to hold that the Society, by paying Shain, before the completion of the building, a portion of the twenty-five per cent. of the contract price reserved until the completion of the building, had released him from his obligation as a surety, but it refused to so hold. Bonnet appealed from the judgment, and from so much thereof as

declared his lien discharged by his obligation as a surety. The Society appealed from the judgment, and from so much thereof as enforced the liens of the plaintiff and Tobin.

*Jarboe & Harrison*, for the Appellant Bonnet.

By paying to Shain the portion of the twenty-five per cent. agreed by it to be retained until after the completion of the work the respondent impaired the security and increased the liability of the appellant. The surety is entitled to the benefit of all the collateral securities held by the creditor. Upon payment by him of the principal debt he is entitled to be subrogated to the rights of the creditor in such securities.

If the creditor parts with such collateral securities the surety is discharged from liability to the extent of the value of the securities so parted with. (Story's Eq., Secs. 502, 638; *Pearl* v. *Deacon*, 24 Beav. 186; *Nelson* v. *Williams*, 2 Dev. & Bat. Eq. 118–20; *Newton* v. *Charlton*, 10 Hare, 646; *Pledge* v. *Buss*, Johns. Eng. Ch., 663; *Strange* v. *Fooks*, 4 Giff. 408; *Cheeseborough* v. *Millard*, 1 John. Ch. 409; *Hayes* v. *Ward*, 4 John. Ch. 123; *Hurd* v. *Spencer*, 40 Vt. 586; *Baker* v. *Briggs*, 8 Pick. 129; *Mathews* v. *Aiken*, 1 Comst. 599; *Furnold* v. *Bank of Missouri*, 44 Mo. 339.) Even though other security equally valuable be taken he is not precluded from availing himself of such discharge. (*N. H. Savings Bank* v. *Concord*, 15 N. H. 122; *Calvert* v. *London Dock Co.*, 2 Keen, 638; *Miller* v. *Stewart, supra; Taylor* v. *Jeter*, 23 Mo. 244.)

If the creditor has the means of satisfaction in his hands, and chooses not to retain it, but suffers it to pass into the hands of the principal, the surety can never be called upon. (*Commonwealth* v. *Vanderslice*, 8 S. & R. 458; *Lichtenthaler* v. *Thompson*, 13 S. & R. 159.)

*Crane & Boyd*, for the Appellant, the First Congregational Society of San Francisco.

Upon this appeal it is in the interest of the Society to sustain the judgment in the particulars in which it is assailed by appellant Bonnet, and in that respect the Society is practically the respondent.

It of course cannot be disputed that a surety is entitled to the benefit of all the collateral securities held by the creditor, but it is equally true that if the creditor applies these securities toward the payment of the obligation created by the contract of the principal debtor, the surety has no cause of complaint. The contract in question here, required twenty-five per cent. of the total price to be paid upon the delivery of the building; this amounted to (counting in the extra work) $9,236 25. Treating this as a security in the hands of the Society, it appears that $5,152 88 of it was paid in discharging existing liens. (This $5,152 88 is the difference between the seventy-five per cent., viz: $27,708 75 which we were authorized, under the contract, to pay Shain, and the sum which we actually paid, viz: $32,861 63); and to that extent lessened the liability of the surety.

Upon the view of the contract taken by counsel for appellant, the Society was under no obligation to themselves to pay off any of the liens. Let us suppose that it had acted upon this theory, and had paid to Shain not only the seventy-five per cent., but also the remaining twenty-five per cent., and Shain had pocketed the money and failed to pay the sub-contractors, laborers, and material men, and had delivered the church with $41,350 of liens upon it, would not the liability of the surety have been only limited by the penalty of his bond? How, then, can he complain, because we have lessened that liability as far as we could by the application of every cent due to Shain, toward its liquidation? The surety cannot complain if the securities in the hands of the creditor are applied in relieving his burden. (Neff's Appeal, 9 Watts & Serg. 36; *Hulms* v. *Coles*, 2 Simons, 12; *Price* v. *Edmunds*, 10 B. & C. 578.)

By the Court, WALLACE, C. J.:

1. No point in argument is made by counsel as to the constitutional validity of the Act of March 30, 1868, entitled "An Act for securing liens of mechanics and others," and we are, therefore, not called upon to consider the question.

2. We are of opinion that the failure of the Congrega-

tional Society to retain in their hands twenty-five per cent. of the contract price, as stipulated in the contract with Shain, operated to release the defendant, Bonnet, as the surety of the latter.

The case is not distinguishable in principle from those of *Taylor* v. *Jeter* (23 Mo. R. 244) and *Calvert* v. *The London Dock Company* (2 Keen's Chancery Reports, 639). In the latter case, the company, by its treasurer, agreed to retain in their hands one fourth of the contract price until after the full completion of the contract by Streather, the contractor, and Laycock and Warburton had become bound as sureties that Streather, the contractor, "should well and truly observe, perform and keep the promises and agreements contained in the contract, which on the part of Streather were and ought to be performed according to the true intent and meaning of the contract." The work proceeded under the contract, but the company advanced to Streather from time to time during its progress more than seventy-five per cent. of the entire contract price, and did not retain in their hands the stipulated reserve of twenty-five per cent. thereof, Streather having subsequently abandoned the work, and left it in an unfinished state, it was held by Lord LANGDALE, Master of the Rolls, that the sureties had been thereby released from responsibility, and in this connection he observed: "What the company did, was, perhaps, calculated to make it easier for Streather to complete the work, if he acted with prudence and good faith; but it also took away that particular sort of pressure, which, by the contract, was intended to be applied to him. And the company, instead of keeping themselves in the situation of debtors, having in their hands one fourth of the value of the work done, became creditors to a large amount without any security; and, under the circumstances, I think that their situation with respect to Streather was so far altered that the sureties must be considered to be discharged from their suretyship."

It results from these views that the decree of the Court below was erroneous in so far as it directed the satisfaction and discharge of the lien of Bonnet, and that the surplus

moneys, if any, arising from the sale of the premises, be paid to the Congregational Society, to the exclusion of the claim of Bonnet. The cause must, therefore, be remanded at the costs of the Congregational Society, with directions to modify the decree in these respects. So ordered.

Neither Mr. Justice RHODES nor Mr. Justice NILES expressed an opinion.