The Markland Mining and Manufacturing Company *v.* Kimmel *et al.*

---

No. 8257.

THE MARKLAND MINING AND MANUFACTURING COMPANY *v.* KIMMEL ET AL.

GUARANTY.—*Performance of Lease by Partnership.—Signing on Condition.—Delivery.—Release of Guarantor.*—Where, in the body of a written lease, the several names of a partnership are written therein, one guaranteeing the performance of the contract of the firm may successfully defend in an action on the guaranty, by showing that when he signed the guaranty it was upon the agreement and condition that he should not be liable as guarantor, and that the contract should not be delivered to the lessor, until all those named in the body of the lease should sign it, and that the lease was delivered in violation of such agreement. The fact that such lease is not executed by all those named in it as lessees or obligors is sufficient to put the lessor or obligee upon enquiry and charge him with notice of the condition.

SAME.—*Non est Factum.—Case Stated.*—Suit upon a guaranty annexed to a lease of a mine substantially in the words, We guarantee the performance by the said J. S. & Co., of all the conditions upon him binding in the foregoing contract and lease. The lease recited in its body that the parties to it were the plaintiff and J. S., R. R., M. R. S. and W. R. S., under the name and style of J. S. & Co., and was signed by all the persons named except R. R. Answer that the guarantors signed and delivered the instrument to J. S., with instructions not to deliver it to the lessor, the plaintiff, until R. R. had signed the lease; that there was no firm styled J. S. & Co. composed of the S.'s, and that R. refused to sign or become a member of such firm.

*Held,* that the answer was sufficient.

SAME.—*Silence.—Notice.—Estoppel.*—In such case mere silence of the guarantors, when notified that they would be held for a default which had occurred, and the fact that thereafter still other defaults and liabilities accrued upon the belief of the lessor, the plaintiff, that the guarantors were bound, does not work an estoppel upon such defence.

From the Vigo Circuit Court.

*J. M. Allen, W. Mack, —— Davis* and *C. F. McNutt,* for appellant.

*J. H. Louden, R. W. Miers, B. E. Rhoads, I. N. Pierce* and *A. J. Kelly,* for appellees.

ZOLLARS, J.—This action was brought against the appellees Kimmel and Dinsmore, and one Francis McKinley, to recover of them, as guarantors, upon a lease executed by third parties to appellant. After the filing of answers by the defendants McKinley died; his administratrix was substituted, and thus became a defendant.

In the following summary of the complaint, as we find it in the brief of counsel, the important portions are sufficiently stated.

The facts alleged in the complaint are, in brief, as follows:

That the appellant, in June, 1877, was an incorporated company, and was the owner of a certain coal mine and shaft in Clay county, describing the lands whereon situated, and also the owner of other property appertaining to the business of mining; that, prior to that time, in June, 1876, appellant had leased to James B. Mulkey and William M. Morris their coal mine and shaft, etc., for a term of two years; that, before the expiration of their said lease, the said Mulkey & Morris had surrendered the possession of the property, under a condition in the lease; that at the time of said surrender the said Mulkey & Morris were indebted to appellant in the sum of $3,000; that, prior to the surrender, said Mulkey and James Small, to enable them to run and operate said mine, had borrowed of the First National Bank of Terre Haute, Indiana, the sum of $1,000, and executed their note therefor to said bank, with the president, treasurer and a director of appellant as such, and for appellant as surety on said note; and that the appellant had been compelled to pay, to discharge said note, the sum of $1,200; that within said month of June, 1877, the appellant leased to James Small & Com-

pany, a copartnership, composed of James Small, Matilda Small and William R. Small, the said coal mine and shaft, from the 1st day of September, 1877, to the 30th day of June, 1879; that the said Small & Company undertook, among other things, to pay twenty-five cents per ton for all coal mined from September 1st to March 1st, and twenty cents per ton from March 1st to September 1st, to be paid each month, on the 20th day thereof; and that after the 1st day of September, 1877, to take out an average of three flats of coal each day, Sunday excepted; and to pay for that quantity of coal whether they took it out or not, etc.; and the said James Small & Company further undertook and bound themselves to perform all the conditions and obligations to be performed by said Mulkey & Morris, and the said Mulkey & Small, as successors of Mulkey & Morris; also to pay the $1,000 bank debt.

Breaches of most or all of the conditions and promises upon the part of Small & Company are alleged, and that the appellees, as guarantors, were duly and properly notified.

The lease, alleged to have been executed by James Small & Company, was filed with and made a part of the complaint. The contracting parties are named in it as follows:

" This article of agreement, made the 23d day of August, 1877, by and between the Markland Mining and Manufacturing Company and James Small, Robert Riddle, Matilda R. Small and William R. Small, under the name and style of the firm of James Small & Company, Witnesseth, That the said company agree to lease to the said James Small & Company their coal shaft No. 1, located on," etc. * * * " The said James Small & Company agrees to operate said mine in a skilful * * * * manner. * * * The said James Small & Company agrees to pay to the said Markland Mining and Manufacturing Company twenty-five cents per ton for all coal mined," etc.

The lease is signed by appellant and James Small, Matilda Small and W. R. Small. Following the signatures upon the

lease is the following, signed by appellees Dinsmore and Kimmel and said McKinley, now deceased.

"We, Francis McKinley, Jr., Samuel Dinsmore and George P. Kimmel, in consideration of one dollar ($1.00), to us in hand paid, and the execution of the foregoing contract and lease by the Markland Mining and Manufacturing Company, do hereby guarantee the performance by the said James Small & Company of all the conditions upon him binding in the foregoing contract and lease."

A demurrer to this complaint was overruled, and appellees excepted.

The answer of appellee Kimmel is in two paragraphs. A demurrer to it was overruled, and appellant excepted. Dinsmore and McKinley filed a joint answer in seven paragraphs. They afterwards withdrew the first and third paragraphs. A demurrer by appellant was sustained to the second, fourth, fifth and sixth paragraphs, and overruled as to the seventh. Each party excepted to the ruling. These rulings on demurrer adverse to appellant are assigned for error.

The first paragraph of Kimmel's and the seventh paragraph of Dinsmore's and McKinley's answers are substantially the same, and we infer from the argument of counsel present the substantial question for decision. We take from the brief of counsel the following abstract of these pleas:

These two paragraphs state, in brief, the following facts: Admitting the signing of the guaranty, they proceed to recite that James Small presented to them a written instrument (the lease already mentioned) and requested them to sign the guaranty attached to it; that defendants examined the said instrument and discovered that it purported to be a lease from appellant of a certain coal mine in Clay county, Indiana, to James Small, Robert Riddle, Matilda Small and William R. Small, under the firm name of James Small & Company; that said lease contained a promise that the said James Small & Company were to pay a certain note of $1,000, in addition to performing the other covenants in said instrument; that the

name of the said lessor appeared in the body of the lease; that the names of the lessees were written within the body of said instrument, and fully and clearly appeared upon the face thereof in these words, to wit: James Small, Robert Riddle, Matilda Small and William R. Small; that said instrument, as they saw, was signed by the lessor, and that it was signed also by three of the above named lessees, to wit: James, Matilda and William R. Small, but not by the said Robert Riddle, whose name appeared in the body; that there was subjoined to said lease the written undertaking (guaranty) not signed by any one, which purported on its face to be an agreement by these defendants to guarantee to the lessor the full and complete performance by the said James Small & Company of all the covenants in the said lease; that they were not willing to sign the guaranty with the lease signed as it was; that they asked Small why said Robert Riddle had not signed the lease; that Small represented that Riddle was in fact a member of the firm of James Small & Company, as appeared in the lease; was worth from fifty to sixty thousand dollars; that he was absent from the State, but would return in a short time and would then sign it; that he, said Small, would procure the signature of the said Riddle thereto; that it was the understanding with himself and said lessor that said Riddle would sign the lease; that, relying upon what appeared on the face of the lease and guaranty, and the representations of said Small, and believing them true, they signed the guaranty and delivered it to said Small, upon the understanding and condition that he should retain and not deliver it until said Riddle signed the said lease; but that, in violation of his agreement, said Small delivered it to the lessor; that there was no company in existence by the name of " James Small & Company," composed of James, Matilda and William R. Small, and that the guaranty so signed was the only one they ever signed, etc.

It is averred further that the defendants never waived their right in any way whatever to stand upon the literal terms of

their undertaking, as the same appear in the body of said lease and guaranty; that said Robert Riddle did not sign the said lease, but failed and refused to execute the same, was not a member of said firm, and refused to become one.

It is the settled law that if in the body of a written instrument several persons be named as sureties, any one signing as surety may successfully defend, upon the ground that when he so signed the instrument and delivered it to the principal maker, it was upon the agreement and condition that he should not be liable as such surety, and that the instrument should not be delivered to the payee or obligee, until the others so named should also sign as sureties, and that the instrument was delivered in violation of such agreement.

The fact that the instrument is not executed by all those named in it as obligors is sufficient to put the payee or obligee upon enquiry, and charge him with notice of the condition. Brandt Suretyship and Guaranty, section 357, and authorities cited; *Allen* v. *Marney*, 65 Ind. 398 (23 Am. R. 73); *Wild Cat Branch* v. *Ball*, 45 Ind. 213.

The correctness of this rule is conceded by the learned counsel for appellant, but they insist that it does not apply to the case at bar, for the following reasons, to wit:

" 1st. As to the instrument in suit, the guaranty, the appellees are all principals, and not sureties; are all equally liable and in the same degree.

" 2d. The instrument signed by these appellees, and now in suit, is upon its face not only a perfect instrument, but a perfected instrument.

" 3d. The rule above mentioned can not be applied to a guaranty at all, because of the nature and inherent qualities of that species of contract."

Counsel for appellees contend that the case is one to which the rule is applicable, and, further, that appellees may plant themselves upon the objection that they did not guarantee the performance of the conditions of a lease, by the firm of James

Small & Company, composed of James, Matilda and W. R. Small, as stated in the complaint.

There are differences between the contract of suretyship and that of guaranty. A surety is usually bound with his principal, by the same instrument, executed at the same time and on the same consideration. He is an original promisor, and debtor from the beginning, and is held to know every default of his principal. He may be sued with the principal. On the other hand, the contract of the guarantor is his own separate undertaking, in which the principal does not join. The original contract of the principal is not his contract, and he is not bound to take notice of its non-performance. He is often discharged by the mere indulgence of the creditor to the principal, and is usually not liable unless notified of the default of the principal.

While these distinctions exist, a surety and guarantor have this in common : that each becomes responsible for the debt, default or miscarriage of another; each is a favorite in the law, and not bound beyond the strict terms of the engagement. There is no reason why the rule which protects the surety should not be applied to protect the guarantor, unless it be the technical distinctions urged by appellant's counsel. When fraud is practiced upon the surety by the principal, for example, as stated in the answers in this case, either the surety or the payee or obligee must suffer. The rule in such cases is that the least guilty shall be protected. It is upon this principle that if the payee or obligee do not have notice of the fraud, or there is nothing in the instrument to put him upon enquiry or charge him with notice, the loss falls upon the surety ; and so, if the payee or obligee have actual notice, or the instrument is such as to put him on enquiry, or charge him with notice, the loss falls upon him and not upon the surety, as the surety in such case is said to be guilty of less negligence than the payee or obligee. We think that the same rule should be applied to a guarantor. *Kingsbury* v. *Westfall*, 61 N. Y. 356.

The answers in this case show that appellees acted in good faith, relying upon the terms of the lease and the representations and agreement of James Small, one of the principal obligors, that Robert Riddle was a member of the firm of James Small & Co., was financially responsible, and would execute the lease before delivery of the same to appellant. The lease upon which the guaranty was written, and to secure the performance of the conditions of which the guaranty was made, states that the firm of James Small & Co. was composed of James Small, Robert Riddle, Matilda Small and William R. Small. The undertaking of the guarantors was that James Small & Co. should perform the conditions of the lease. The lease, when presented to the guarantors, and when delivered to appellant, was not signed by the firm of James Small & Co., in the firm name, but by three of the partners, named in the lease, in their individual names. Ordinarily, contracts by a firm are signed in the firm name. In proper cases it may be shown that an instrument signed by all of the individual partners is nevertheless the obligation of the firm. The terms of the lease in this case seem to indicate that each of the individual partners should sign it. There is nothing in any paper in the case to indicate that the signatures of the three were meant to be a signing by or for the firm. While the undertaking of the guarantors is, technically, an instrument distinct from the lease, it must be interpreted by the lease. The guaranty, upon its face, was for the performance of the terms of the lease, by the James Small & Co. therein named. We must look to the lease to learn who composed that firm. When the lease, with the guaranty upon it, was delivered to appellant, it was thus notified that the James Small & Co. mentioned in the written guaranty was the same James Small & Co. named in the lease, and that the lease was neither signed by the firm, in the firm name, nor by all of the individual members, as named in the lease. This was sufficient notice to bring the case within the rule already stated, and let in the defence set up in the answers. The lease gives

the names of the four persons composing the firm of James. Small & Co.   The fair interpretation of the contract of guaranty is that the four persons named in the lease, as composing the firm, should become responsible, and perform the conditions of the lease.

Appellees might have agreed to guarantee the performance of the terms of the lease by the three persons who had signed it when presented to them, but to this, it is averred in the answers, they did not agree.   A guarantor, like a surety, is bound only by the strict terms of his engagement, and his liability is not to be extended by implication beyond the terms of his contract.   Brandt Suretyship and Guaranty, secs. 79, 98, 99, 102, and cases cited; *Barns v. Barrow*, 61 N. Y. 39. In this case Edward F. Barrow entered into a written agreement with John W. Barns, whereby Barns agreed to furnish Barrow flour and feed, to be by Barrow sold on commission, at prices to be designated by Barns.   The defendants guaranteed, in writing, the performance of this agreement on the part of said Edward F. Barrow.   The flour, etc., which was furnished under this agreement to Edward F. Barrow did not belong to John W. Barns, but to William Barns and the said John W. Barns under the firm name of John W. Barns & Co., who were the plaintiffs.   On settlement there was a balance of $600.51 due said firm from said E. F. Barrow, who had become insolvent.   Barrow, the guarantor of E. A. Barrow, refused to pay, because he had never guaranteed the performance of a contract enuring to the benefit of William Barns and John W. Barns, under the firm name of John W. Barns & Co., but one enuring to the benefit of John W. Barns only.   It was held that the action would not lie against the guarantor.   The court, on page 42, says: "It is a case of pure guaranty; a contract which is said to be *strictissimi juris*; and one in which the guarantor is entitled to a full disclosure of every point which would be likely to bear upon his disposition to enter into it.   The consideration of the contract does not enure to him, but to another.   He assumes the burden of a contract.

without sharing in its benefits. He has a right to prescribe the exact terms upon which he will enter into the obligation, and to insist on his discharge in case those terms are not observed. It is not a question whether he is harmed by a deviation to which he has not assented. He may plant himself upon the technical objection, this is not my contract, *non in hœc fœdera veni.* Accordingly, in the present case, he may say: 'I contracted with John W. Barns, and will not be liable for supplies furnished by a firm, though he may be a member of it.'"

Again the court says:

"The surety can not be bound beyond the scope of his engagement. The sole question is: To what did he agree? And if he contracted with one person, as he had reason to suppose, no other person can be substituted in the place of the apparent contractee. On like grounds no person can be added to or subtracted from the apparent number. The *words* of the written instrument point out the person with whom he contracted and measure his liability, unless it be made to appear affirmatively, by legitimate evidence, that the guarantor intended to embrace others." *Walsh* v. *Bailie,* 10 Johns. 180; *Dobbin* v. *Bradley,* 17 Wend. 422; *Penoyer* v. *Watson,* 16 Johns. 99; *McGovney* v. *State,* 20 Ohio, 93; *State* v. *Medary,* 17 Ohio, 554; *Wright* v. *Johnson,* 8 Wend. 512; *Miller* v. *Stewart,* 9 Wheat. 680. In consonance with the rule above stated, the rulings of the American and English courts have been that if a guaranty be made for several persons, composing a firm, or for a firm composed of several named persons, the guarantor will not be liable for the default of or for credit given to a less number of the persons so named, or a firm of the same name, composed of a less number of such persons. *Simson* v. *Cooke,* 8 Moore 588; *Backhouse* v. *Hall,* 6 Best & S. 507; *Bill* v. *Barker,* 16 Gray 62; *State* v. *Boon,* 44 Mo. 254.

The second paragraph of Kimmel's answer is substantially the same as the first, except that it contains a further averment of full knowledge on the part of appellant of all the

representations, conditions and agreements made to and with appellees by James Small. The court was not in error in overruling the demurrer to the answers.

The fourth and fifth replies are addressed to these answers. Counsel for appellant contend that if the answers are good they are avoided by these replies, and that the court erred in sustaining a demurrer thereto. These replies were pleaded as an estoppel. The fourth is, substantially, as follows:

It alleges that appellant was wholly ignorant of the representations of Small to appellees, as set up in said answers, and was wholly ignorant of any promise of Small to procure said Riddle's signature to the said lease before delivering to appellant the guaranty. It further alleges that appellant accepted from Small said lease and guaranty in good faith, and put said firm of "James Small & Co.," to wit, James, Matilda and William R. Small, into the possession of said property and mines; that about three months after putting them into possession as aforesaid, they became and were in default in the obligations of said lease, by them before that time to be performed; that appellant notified said appellees of such default, and that it would look to them to make good said default. The defendants received said notice, well knowing that appellant was ignorant of said Small's statements, representations and promises, and well knowing that said Riddle had not signed said lease, and well knowing that said appellant was relying upon said guaranty, and so knowing, failed to notify appellant of the representations and agreement of said Small, and failed to notify appellant that they were not bound as they appeared to be by said guaranty; that, being so ignorant, and appellees saying nothing to advise appellant that they were not bound as they appeared to be, appellant allowed said Small & Co. to go on, under said lease, and to become in default under said lease, after said notice, in the sum of $5,000.

The fifth reply is the same as the fourth in the statements of want of notice to appellant, and notice to appellees. It con-

tains the further and different allegations that, upon receiving the lease, appellant put James, Matilda and William R. Small into the possession of the leased property; that appellees knew that said James Small, and his said wife and son, were alone running and operating the mine under the lease, and that Riddle had not signed the lease, and yet remained silent and did not notify appellant of the conditions, etc., upon which the guaranty was executed by them.

These replies purport to be to the whole of the several answers. If they were good in other respects, they are bad in that they are, in fact, replies to but a portion of the answers. In the complaint a recovery is asked not only for the rent of the leased premises while occupied by James Small & Co., but also for the amount of the note therein mentioned, and a balance due from former lessees. The lease, made a part of the complaint and answers, is an undertaking to pay the rent, the note and said balance. The fact that appellees remained silent when notified of the default of James Small & Co., as stated in the fourth reply, could not, in any event, be held to estop them as to anything except the rents for the property thereafter accruing, and the silence mentioned in the fifth reply could not estop them as to the note and balance due from other parties. When the demurrer to these replies was sustained, a reply of general denial was in to the several answers. Under this, proof was admissible to negative the allegations of notice in Kimmel's second answer. So far as the other replies were intended to meet these allegations of notice, the sustaining of the demurrer to them, if error, would be a harmless error. Appellants could not make the supposed error available by withdrawing the general denial after the ruling upon the demurrer.

The averments of want of notice on the part of appellant, taken as a reply to the answers, mean that appellant had no notice of the conditions upon which the guaranty was executed and delivered by appellees to Small, except such as the law implies. The answers being good without averments of actual notice to appellant, they are not sufficiently met by

allegations in the replies that appellant did not have such notice.     In the case of *Allen* v. *Marney*, 65 Ind. 398 (32 Am. R. 73), WORDEN, C. J., said: "At the time the bond was signed by Allen, the name of Thomas R. Cobb was written in the body thereof as a co-obligor, and Allen signed it and left it with Pritchett," (principal,) " with the agreement and understanding that it was not to be delivered to the mayor, or used, until it should be signed by Cauthorn and Cobb. * * The bond, signed only by Allen and Cauthorn as sureties, was afterward, without their knowledge or consent, delivered by Pritchett to the mayor, with Cobb's name erased, and was approved by him. The mayor had no notice of the condition upon which the appellants had signed the bond, other than the fact that Cobb's name had been written in the body thereof as co-obligor, and had been erased.     We are of opinion, that, upon these facts, the action can not be maintained, that there has been no valid delivery of the bond, so far as the appellants are concerned, and therefore that it is not their deed."     See also *Ward* v. *Churn*, 18 Grat. 801.     In this case the Supreme Court of Virginia says: "The obligee or grantee, on the other hand, has full notice from the face of the paper of the original intention of those who signed it, and he can not complain if they are allowed to prove that this original intention was not relinquished in the delivery.     He should either refuse to accept the paper in its existing shape, or be prepared to repel the defence of a conditional delivery."     The reasoning of these cases applies to the case under consideration.  The fact that appellees remained silent under the circumstances stated in the answers might be competent as evidence tending to show that the representations and agreement were not made by Small, as stated in the answers, but it would not be conclusive.     It would not be necessary to plead such fact specially, as it would be admissible under the general denial ; and, possibly, it might be competent as evidence under a different and proper plea, as tending to show that the conditions upon which the guaranty was executed had been waived by appellees ; but it would

not be conclusive, by any means. We are unable to understand how the silence of appellees can estop them from making the defence set up in the answers. They are not charged with any affirmative act by which appellant was misled. It is apparent that whatever loss appellant has suffered, has been the result of its own negligence. It accepted without enquiry the lease and guaranty, in such shape as to have put an ordinarily prudent person upon enquiry. It treated the firm of James Small & Co. as composed of the three Smalls, when the lease named the Smalls and Riddle as composing that firm. See *Merrells* v. *Phelps*, 34 Conn. 109. Taking the answers as true, the signatures of appellees to the written guaranty were procured by fraud; there has been no valid delivery to appellant; they have not waived the conditions upon which the guaranty was signed, and are, therefore, not liable upon it.

We find no error in the record for which the judgment should be reversed. It is therefore affirmed, at the costs of appellant.