BOARD OF COM'RS OF MORGAN COUNTY v. BRANHAM et al.

(Circuit Court, D. Indiana. July 25, 1893.)

No. 8,735.

PRINCIPAL AND SURETY—DISCHARGE OF SURETY—ADVANCE PAYMENTS TO CONTRACTOR.

A contract provided for a payment of 85 per cent. of the total cost of the completed work when it was, in the opinion of the party of the first part, half completed; such percentage to be carefully estimated by the engineer of said party, but such payment not to exceed $7,480. The party of the first part, relying on the fraudulent representations of the party of the second part that the work was half completed, made a payment of $10,046.68. *Held,* that this discharged the sureties on the bond of the party of the second part.

At Law. Action on a bond by the board of county commissioners of Morgan county, Ohio, against George F. Branham and Enos Hege, principals, and William G. Wasson and Henry C. Adams, sureties. Heard on demurrer by Wasson and Adams to the complaint. Demurrer sustained.

Harding & Hovey, for complainant.
Hawkins & Smith, for defendants.

BAKER, District Judge. This is an action on a bond executed by Branham and Hege, as principals, and Wasson and Adams, as sureties, to the board of county commissioners of Morgan county, Ohio. The sureties, Wasson and Adams, demur to the complaint on the ground that the same does not state facts sufficient to constitute a cause of action against them.

The facts disclosed by the complaint, so far as material to the determination of the question raised by the demurrer, are as follows:

A contract in writing was entered into between the plaintiff, as party of the first part, and Branham and Hege, as party of the second part, by the terms of which the latter agreed to furnish the material and do the work specified therein. That part of the contract having reference to the payments for the work is as follows:

"Payment for said work is to be made as follows, to wit: When said work shall have been, in opinion of party of first part, half completed, said party of first part, or its engineer, shall carefully estimate the work completed, and pay the party of the second part a sum of money equal to 85% of the cost of the completed work, as agreed upon herein: provided, said sum shall not exceed the amount of $7,480.00. And on the completion of the entire work, and its acceptance by party of first part, then full and complete payment, as herein provided for, shall be made to party of the second part."

Branham and Hege, as principals, and Wasson and Adams, as sureties, executed to the plaintiff the bond in suit, for the faithful performance of the contract. Branham and Hege entered upon the construction of the work contracted for, and prosecuted the same until they had completed about one-third part thereof, when they falsely and fraudulently represented to the plaintiff, through its board of county commissioners, that they had fully completed the one-half part or more of said work, and asked to be paid therefor the sum of $10,046.68. The plaintiff, relying upon these false and fraudulent representations, thereupon paid to them said sum of $10,046.68. As a matter of fact, Branham and Hege had not completed more than one-third part of said work, and thereupon they abandoned said work and contract, and neglected and refused to proceed with the same, and left it uncompleted. The plaintiff was compelled to, and did, complete said work, at a cost, in excess of that provided for in the contract, of $13,429.56.

The contention on behalf of the sureties is that they have been released bcause the plaintiff, without any estimate having been made by it or its engineer to ascertain whether one-half of the work had been completed, paid to Branham and Hege $10,046.68,—a sum largely in excess of the amount to which they would have been entitled if they had actually completed one-half of the work,—and because, at the time the payment was made, Branham and Hege had not completed one-half of the work, and hence were not entitled to receive any payment whatever.

It is well settled that a surety is bound only by the strict terms of his engagement, and, as he assumes the burdens of the contract without sharing its benefits, he has the right to prescribe the exact terms upon which he will enter into an obligation, and to insist

upon his discharge if those terms are not observed. An innocent surety is always a favorite subject of legal protection. State v. Cutting. 2 Ohio St. 1; Raymond v. Whitney, 5 Ohio St. 201; Hall v. Williamson, 9 Ohio St. 17. It is not a question whether he is harmed or benefited by a disregard of the terms to which he has assented. Miller v. Stewart, 9 Wheat. 681; Manufacturing Co. v. Kimmel, 87 Ind. 560; Post v. Losey, 111 Ind. 74, 12 N. E. Rep. 121. Where, by the terms of the contract, the principal is to be paid by the debtor or obligee in installments, and the payments are made in advance of the time specified in the contract, the surety will be discharged. Brandt, Sur. (Ed. 1878,) § 102; Id. § 371. Calvert v. Dock Co., 2 Keen, 639, is a case similar to the one at bar. One Streather contracted to build certain works for the dock company, and to furnish the materials. The company was to pay the agreed price of £52.200 in installments, to wit, three-fourths of the costs of the work done to be paid for every two months, on the certificate of the company's engineer, and the residue on the completion of the contract. Warburton and Laycock became sureties upon the bond of Streather for the performance of the contract. Streather entered upon the work, but failed to complete it, and finally abandoned it, and suit was instituted upon the bond. Streather had been paid, from time to time, more than three-fourths of the estimated cost of the work performed, and it was held that thereby the sureties were released. In the course of his opinion, Lord Langdale, M. R., said:

"In this case the company were to pay for three-fourths of the work done every two months. The remaining one-fourth was to remain unpaid for till the whole was completed; and the effect of this stipulation was, at the same time, to urge Streather to perform the work, and to leave in the hands of the company a fund wherewith to complete the work, if he did not; and thus it materially tended to protect the sureties. What the company did was perhaps calculated to make it easier for Streather to complete the work, if he acted with prudence and good faith; but it also took away that particular sort of pressure which, by the contract, was intended to be applied to him. And the company, instead of keeping themselves in the situation of debtors, having in their hands one-fourth of the value of the work done, became creditors to a large amount, without any security; and under the circumstances I think that their situation, with respect to Streather, was so far altered that his sureties must be considered to be discharged from their suretyship."

Leeds v. Dun, 10 N. Y. 469, is a case where the defendant was sued for the price of certain goods sold by the plaintiff to one Woodcock on the credit of the defendant's guaranty. The instrument signed by the defendant stipulated that he would be responsible for the payment of certain bills of goods to be sold on a credit of six months. The goods were sold in part on a credit of six months, and in part on a credit of four months, and it was adjudged that the guarantor could not be holden for any part of the goods so sold. The court, in the course of its opinion, says:

"The recitals in this instrument show, and with every precision, the contract into which the defendant proposed to enter. It was optional with the plaintiff's firm to accept the proposition, and enter into the contract, or to

refuse it. If they accepted the contract, they could only do so on the terms proposed by the defendant. If they did not comply with the terms so proposed, there was no contract made, and there was no meeting of minds between the parties. The contract proposed by the defendant was to guaranty the payment of a debt to be contracted by a third person upon certain terms. The compliance with those terms formed the only consideration of the defendant's contract. The plaintiff's firm did not comply with the terms, for they sold a part of the goods ordered upon a credit of four months, instead of six months."

Bragg v. Shain, 49 Cal. 131, is a case wherein a church society contracted with Shain for the erection of a church, and was to pay for the work and materials $31,850, in installments, payable on the 1st day of each month, to the amount of 75 per cent. of the value of the materials furnished and work done during the preceding month, and the remainder was to be paid when the work was completed. One Bonnet became surety for Shain for the faithful performance of the contract. During the progress of the work the society paid Shain more than the 75 per cent. provided for in the contract. While the work was under way, Bragg, Tobin, and Bonnet furnished Shain materials which were used in the construction of the building, and for which Shain neglected to pay, and they filed liens, and the present suit was instituted to enforce these liens. The trial court decided against Bonnet, holding that, as he was surety for Shain, he could not enforce his lien against the society. On appeal, Bonnet contended that as Shain had been paid by the society more than the 75 per cent., in violation of the terms of the contract, he was released as surety; and this contention was sustained by the court, which held that the failure of the society to retain in its hands the one-fourth part of the contract price, as stipulated in its contract with Shain, operated as a discharge of Bonnet as surety.

The case of Taylor v. Jeter, 23 Mo. 244, was as follows: A. agreed to furnish material and erect a building for B., and B. agreed to pay A. specified sums at particular stages in the progress of the work, the remainder to be paid 60 days after the completion of the building, and its acceptance by B. Upon this contract, C. became surety for A. The building was completed and accepted by B., and although B. received notice, before the completion of the building, of the filing of various mechanics' liens thereon, he paid the contract price to A. before he was bound by the contract to pay the same. B. afterwards had to pay the liens, and sued C. on the contract; but it was held he could not recover, as he had released C. by paying A. before he was bound to do so.

The case of Simonson v. Grant, 36 Minn. 439, 31 N. W. Rep. 861, is similar, in its essential features, to the case of Taylor v. Jeter, supra. Following the cases hereinbefore cited, the court held that the sureties upon the bond were to be considered as released. In the course of its opinion the court says:

"In such cases the surety may be deprived of the inducement which the principal would have to perform the contract in due time, as the contract required."

In the case at bar, over $10,000 were paid to the principals before, by the terms of the contract, they were entitled to receive anything. Such a gross departure from the terms of the contract, to the prejudice of the sureties, operates to release them from the bond in suit, unless the false and fraudulent conduct of the principals in procuring the payment deprives the sureties of the right to take advantage of it. In Bebout v. Bodle, 38 Ohio St. 500, it is held, where a principal debtor, by falsely and fraudulently representing to the creditor that his surety has consented to an extension of time for payment, procures from the creditor an agreement for such extension in consideration that interest be paid, such agreement is, as to the creditor, fraudulent; and he may, upon discovery of such fraud, even after the period of extension has expired, repudiate such agreement, and sue upon the original contract, without refunding or tendering back the interest paid under such invalid agreement. It is rudimentary that fraud vitiates all contracts; and if the plaintiff was induced to make the payment to the principals by their false and fraudulent representations, without any fault or negligence on its part, it may well be that the sureties would be precluded to invoke such payment as a ground for their release from the bond in suit. But such is not the situation of the plaintiff. The contract provides that:

"When said work shall have been, in opinion of party of first part, half completed, said party of first part, or its engineer, shall carefully estimate the work completed, and pay the party of the second part therefor a sum of money equal to eighty-five per cent. of the cost of the completed work, as agreed upon herein: provided, said sum shall not exceed the amount of seven thousand four hundred and eighty dollars."

By the terms of the contract the plaintiff, or its engineer, was required carefully to estimate the amount of work completed before making any payment. The performance of this duty was important, for the protection of the sureties. But, if the plaintiff had the right to rely on the representations of the contractors, that would have been a justification for the payment of no more than $7,480; so that the fraudulent representations, relied on, afford no excuse for the payment to the contractors of the sum of $10,046.68. In no just sense can it be claimed that the plaintiff was induced to make the payment by the fraudulent representations of the contractors. It had no right to rely on such representations, and it was bound, either in person or by its engineer, to make the estimate of the work done for itself. If the plaintiff was misled, it was through its own fault, and the failure to perform what was required of it by the contract. In such case, it cannot shift the consequences of its own fault and want of care onto the sureties. Manufacturing Co. v. Kimmel, 87 Ind. 560.

In the opinion of the court, the demurrer must be sustained, and it is so ordered.