## HAND MANUFACTURING COMPANY *v.* MARKS.

[52 Pac. 512, 53 Pac. 1072, 59 Pac. 549.]

1. MECHANIC'S LIEN—NECESSARY PARTIES TO AN APPEAL.—A contractor for the construction of a building, though made a party below, is not a necessary party to an appeal by the owner from a decree foreclosing a mechanic's lien for material furnished the contractor, where no demand was made for a personal judgment against the latter, and no such judgment was rendered: *Cooper Mfg. Co.* v. *Delahunt*, 36 Or. 402, followed.

2. MECHANIC'S LIEN CASES—ADVANCEMENT ON CALENDAR.—The requirement of Section 3677 of Hill's Ann. Laws, that mechanic's lien cases shall be tried in the circuit court, "shall have preference upon the calendar of the court, and shall be tried by such court without unnecessary delay," applies to the circuit court only, and is not binding on the supreme court.

3. IDEM.—Suits for the enforcement of mechanics' liens are not entitled to precedence on the calendar of the supreme court because of their subject-matter.

4. RIGHT OF SURETIES TO ENFORCE MECHANICS' LIENS.—A surety on a contractor's bond engaging to protect a building against mechanics' liens cannot claim a lien on such structure so long as he remains bound by that obligation, but the prohibition ceases on his being released.

5. RELEASE OF SURETY BY PREMATURE PAYMENT.—A surety on a contractor's bond is not discharged by the owner making a premature payment to the contractor, where such payment does not impair any security reserved under the contract and which would inure to the benefit of the surety.

6. RELEASING SURETY BY TAKING NEW BOND.—The acceptance of a second bond with different sureties does not discharge the sureties on the first, where the second bond was given as additional security, and was so understood and accepted by the parties to the contract.

7. RELEASING SURETY BY WITHHOLDING PAYMENTS.—A surety on a contractor's bond securing the owner against mechanics' liens is not discharged by the owner withholding beyond the time provided in the contract a deed of land to be given the contractors in part payment, where there were undischarged liens on file against the contractor and owner: *Henry* v. *Hand*, 36 Or. 492, followed.

8. RELEASING SURETY BY DISBURSING ON CONTRACTOR'S ORDERS.—An agreement between a contractor and the owner that, instead of making payments as they became due, the owner would retain the amounts and disburse them on the contractor's order, is not such a violation of the contract as to discharge a surety.

9. CONSTRUCTION OF WRITTEN MEMORANDUM.—A relinquishment by a contractor of claims against the owner is not a release of claims of the owner against the contractor.

From Multnomah : LOYAL B. STEARNS, Judge.

Suit by the Hand Manufacturing Company against J. S. Marks and divers others to foreclose a mechanic's lien. By a process of elimination, the case finally consisted of a dispute between the sureties on the contractor's bond and the property owner, the particulars of which are stated in the opinion. A motion to dismiss the appeal was overruled, the court declined to advance the case on the calendar, and finally confirmed the decree of the trial court.

AFFIRMED.

Decided 14 March, 1898.

ON MOTION TO DISMISS APPEAL.

[52 Pac. 512.]

*Mr. Arthur C. Emmons*, for the motion.

*Mr. Thomas N. Strong, contra.*

PER CURIAM. This is a motion to dismiss an appeal. The transcript shows that plaintiff, a private corporation, commenced this suit to foreclose a lien upon lots 5 and 6, in block 92, in the City of East Portland, for material furnished to the defendant J. S. Marks, who, by virtue of a contract with one L. D. Brown, now deceased, had charge of the construction of a brick building for the latter on said premises, then owned by him. The defendants Theodore Jensen, James Lyons, and the East Portland Mill & Fixture Company, filed separate answers, in the nature of cross bills, seeking to foreclose their respective liens upon said premises for material furnished to be used in the construction of said building, and the defendant E. R. Brown, executrix of the last will and testament of L. D. Brown, deceased, and the present owner of said premises, filed an answer to the complaint

and to the cross bills of her co-defendants. Marks was made a party and demurred to the complaint, but, his demurrer being overruled, he failed to plead further, and the cause being tried, resulted in a decree foreclosing the liens of plaintiff and the East Portland Mill & Fixture Company for the amount demanded by each respectively; but, the court having found that Jensen and Lyons were sureties on Marks' undertaking for the faithful performance of his contract, a breach of which necessitated an outlay of money by the owner in completing the building, after Marks had abandoned his agreement, in excess of the amounts demanded by said sureties as lien claimants, their cross bills were dismissed, and they jointly, and E. R. Brown separately, appeal, but did not serve the notices thereof upon Marks.

1. It is contended that Marks is an adverse party, and not having been served with a notice of the appeal this court is without jurisdiction, and therefore the appeal should be dismissed. In *Cooper Mfg. Co.* v. *Delahunt*, 36 Or. 402 (51 Pac. 649), we had occasion to examine this question and reached the conclusion that while the contractor having charge of the construction of any building is made by statute the agent of the owner, for the purpose of binding the latter for the value of the material used in or labor performed upon such building at the request of the former, he is not a necessary party to a suit to foreclose a mechanic's lien, unless a personal decree is sought against him by the owner, and, no such relief being demanded in the case at bar, it follows that the motion must be denied.     MOTION OVERRULED.

Decided 15 August, 1898.

ON MOTION TO ADVANCE CASE ON CALENDAR.

[ 53 Pac. 1072.[

Submitted without argument.

MR. JUSTICE WOLVERTON delivered the opinion.

2.    This is a motion to advance the above cause upon the calendar for hearing, based upon Section 3677, Hill's Ann. Laws, which provides, among other things, as follows : "Suits to enforce the liens created by this act shall be brought in the circuit courts, and the pleadings, process, practice, and other proceedings shall be the same as in other cases.  *  *  *  All suits to enforce any lien created by this act shall have preference upon the calendar of the court over every civil suit so brought, except suits to which the state shall be a party, and shall be tried by such court without unnecessary delay."   By a fair intendment, the language of the act states simply a rule of procedure to be observed by the circuit courts, in which it is provided such cases shall be instituted. The injunction that they shall be tried by such court without unnecessary delay is an unmistakable indication that the trial, and not the appellate, court was intended.

3.    The plain purpose of the act is to promote an early trial in the interest of a deserving class of persons, many of whom are dependent (as we have said in *Falconio* v. *Larsen*, 31 Or. 137, 37 L. R. A. 255, 48 Pac. 703) upon their recent earnings for the sustenance of themselves and those dependent upon them, and to make the wages of labor speedily available.   This purpose is in most instances subserved when the trial court has given the parties a hearing ;  and hence it is evident that the legislature deemed it sufficient for all practicable purposes that the court of original jurisdiction be required to give prece-

dence to cases coming within the purview of the act.   At any rate, the language employed indicates such to be the intendment, and we cannot invade the legislative domain to give it broader scope.   The motion will be denied.   MOTION OVERRULED.

Decided 8 January, 1900.

ON THE MERITS.

[ 59 Pac. 549.]

For Lyons and Jensen there was a brief over the names of *Fred Larkin Keenan* and *Guy G. Willis,* with an oral argument by *Mr. Keenan.*

For E. R. Brown and E. R. Brown, executrix, there was a brief and an oral argument by *Mr. Thomas N. Strong.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This suit was instituted for the purpose of foreclosing a mechanic's lien.   As parties defendant, James Lyons, Theodore Jensen, and the East Portland Mill & Fixture Company also set up, in their respective answers, mechanics' liens, and prayed their foreclosure.   The decree of the court below directed the foreclosure of the liens of plaintiff and the East Portland Mill & Fixture Company, but dismissed the cross complaints of Lyons and Jensen. The last named parties, and the defendant E. R. Brown and E. R. Brown, executrix of the will of L. D. Brown, deceased, who is the owner of the building and premises upon which the liens were preferred, prosecute appeals. At the hearing in this court the appellants only appeared and contested the proceedings as between themselves, so that we shall determine the matter as if the controversy was between them exclusively.

On November 12, 1892, the defendant J. S. Marks entered into a contract with L. D. Brown, since deceased,

whereby he undertook and agreed to furnish the materials and labor for and to construct a brick building, for the consideration of $44,004, to be paid in specified installments as the work progressed, upon the certificate of the architects in charge.  It was agreed, among other things, that Marks should take in part payment thereof seventeen lots, valued at $200 per lot; that a bond for a deed therefor should be given on the signing of the contract, and the deed made at any time the contractor desired, after the fifth payment.  The first payment of $2,000 was to be made when the basement was built and· the first story rough floor laid.  In the view we take of the controversy, the other payments become unimportant, except as it respects the time of the fifth.  Marks was to allow Brown $5.50 per ·thousand for all brick that he might furnish for construction, and the cost of putting in certain concrete footing courses.  Marks at the same time gave a bond conditioned that he would faithfully perform the contract in every particular, and "in all cases show receipts that all labor performed and all material furnished on the said premises has been paid for; and if he shall in all cases protect the said premises against mechanical liens so far as the said contract is concerned, and if he shall show a certificate from the county clerk and recorder that there has been no lien filed on the said premises sixty days after the completion of the said contract, then this bond shall be null and void; otherwise, it shall remain in full force and virtue."  The appellants Lyons and Jensen became sureties upon the bond, and commenced to furnish the materials on account of which their lien claims were filed, very soon after the signing of the same.  On the same or the next day after the contract was entered into, Brown let Marks have $500 upon his duebill, and paid him $500 December 1, 1892, $300 on the tenth, and $700 on the fifteenth of the same month,

upon said contract, at which latter date he received the certificate entitling the contractor to the first payment of $2,000. The duebill was then surrendered, and the settlement for the first payment was completed.

Subsequently, on December 30, 1892, the contractor gave Brown another bond for the faithful fulfillment of his contract, similar to the first, but with different sureties. By the terms of this bond, all money that became thereafter due and payable to Marks under the contract was to be paid to E. B. McFarland, and he was authorized to receive all such money and disburse the same for labor and materials furnished in the erection of the building; and it was further stipulated that the obligation was to be in addition to the bond theretofore given. In pursuance of this arrangement the payments were thereafter made to McFarland, and by him disbursed upon the order of Marks, until August 5, 1893, when, by another arrangement between Marks and Brown, the latter retained the money after it became due, and paid it out upon the order of Marks on account of labor done and materials furnished. About September 30, 1893, Marks abandoned his contract; and on the ninth of October, after giving the required notice to the sureties, Brown took possession of the building in its unfinished condition, and completed it. When Marks quit the work he had received certificates from the architect which entitled him to payments in the aggregate of $26,300, and he had been paid $26,217.50. Aside from this, Brown had expended on concrete work $813.74, and furnished brick to the amount of $522.50, for all of which he was entitled to credit as against the contractor. Brown had also caused to be deeded, as directed by Marks, five of the seventeen lots. On August 29 Marks made a demand upon Brown for a deed to sixteen of the lots, which was declined. The refusal was

conditional and dependent upon their value being applied to claims against the building. On October 12, in consideration of $300, the contractor gave Brown the following certificate :

"I, John S. Marks, hereby certify that I am unable to complete or carry on my contract for the erection of L. D. Brown's five-story brick building; and I do consent to his finishing it himself in accordance with the contract, plans and specifications. Up to the time I ceased work, the work was done in accordance with the plans and specifications, and I have no claims for extras against the building, or any claims against L. D. Brown. And that I have been paid according to said contract up to the time I quit work, save and except the lots in Peninsular Addition, which are in litigation between Inman, Poulsen & Company and L. D. Brown and Peninsular Real Estate Company, which is to be settled in the courts.

J. S. MARKS."

Thereupon he turned over to Brown his subcontracts, bills paid, and receipts for labor and materials.

Under the facts of which the foregoing is an outline, the defendant Mrs. Brown insists that Lyons and Jensen are estopped from claiming a lien upon the building by reason of their surety relationship with Marks ; while on the other hand it is contended that Brown has been guilty of such a breach of performance of the contract on his part as to discharge the sureties, and, the relationship having ceased to exist, they were entitled to their liens for labor performed and materials furnished in the construction of the building. It is claimed that they are discharged as sureties because (1) Brown paid a portion of the first installment before it became due ; (2) he accepted a new bond, with other sureties ; (3) he failed and refused to deed the lots after the fifth payment, when requested ; (4) payments were not adjusted to conform to the architect's certificates of the amount due at the time Marks

quit work on the building,—either Brown owed Marks $82.50, or Marks owed Brown the difference between that amount and $1,336.24; and (5) the transaction involving the giving of the certificate of October 23 was a release of Marks from all liability to Brown under both the contract and the bond. Of these in their order.

4. The effect of the undertaking signed by Lyons and Jensen as sureties is to protect the building against mechanics' liens. Their lien claims upon the building were therefore inconsistent with, and contrary to, both the spirit and letter of their obligation; and, being so, they cannot be permitted in equity and good conscience to prefer such claims: *Spears* v. *Lawrence*, 10 Wash. 368 (45 Am. St. Rep. 789, 38 Pac. 1049). However, if the owner has discharged the sureties from their obligation, there can be no good reason why they should not be entitled to claim their liens. Their undertaking is thenceforth without vitality, and there can be no violation of a stipulation which is no longer binding or obligatory: *Bragg* v. *Shain*, 49 Cal. 131; *Simonson* v. *Grant*, 36 Minn. 439 (31 N. W. 861).

5. We come now to the question of the discharge of the sureties. It must be conceded that contracts of suretyship are to be interpreted and applied in the strictest manner. As said in *Miller* v. *Stewart*, 22 U. S. (9 Wheat.) 681, 703, 6 L. Ed. 189: "It is not sufficient that he [the surety] may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal." But that case was concerning a material alteration of the writing, and not of a breach on the part of the obligee. In a case involving a breach, the inquiry is directed to the question whether the sureties' security has been lessened by what has been done by

the creditor or the obligee. Lord LANGDALE, M. R., in *Calvert* v. *Dock Co.* 2 Keen, 638, 644, states it in this wise : "Bearing in mind that the surety, if he pays the debt, ought to have the benefit of all the securities possessed by the creditor, the question always is whether what has been done lessens that security." Measured by this rule, it is clear that Lyons and Jensen were not discharged as sureties by the premature payment of a part of the first installment. The security which can be said to have been reserved under the contract for the benefit of the sureties was not lessened or impaired by such payment ; and, while Brown may have been guilty of a technical breach of his contract in making the advances, yet it did not operate to the impairment of any reserved security of which the sureties could complain. *Calvert* v. *Dock Co.* is cited as opposed to this view ; so, also, are the cases of *Bragg* v. *Shain*, 49 Cal. 135 ; *Simonson* v. *Grant*, 36 Minn. 439 (31 N. W. 861) ; *Board of Commissioners* v. *Branham* (C. C.), 57 Fed. 179 ; and *Association* v. *Miller*, 16 Nev. 327, 332. But none of them can be so considered. In the *Calvert Case* the company was to pay for three-fourths of the work done every two months, and to retain the remaining one-fourth until the work was completed ; but it did not keep its stipulation in this particular, and paid over much more than the contract required before completion. Thus, the fund, which it was intended should be reserved for the completion of the work in case the contractor failed in his undertaking, was impaired by his act, and the surety was deprived of the security which had been stipulated for. The facts and holding in *Bragg* v. *Shain*, are of similar import. In *Simonson* v. *Grant*, the contract provided that so much of each payment as should be necessary to pay for materials and labor furnished should be used for that purpose, and after the first payment, and before others were made, the

contractors were required to furnish the obligee with a written statement from parties furnishing materials and labor that the money paid had been so used ; but the contractors and owner each ignored this express stipulation, and after the default of the contractors in making application of payments to labor and material accounts the owner continued to make payments in utter disregard thereof. In *Board of Commissioners* v. *Branham*, the contract provided for a payment of eighty-five per cent. of the total contract price when the work was half completed, such payment not to exceed $7,480 in any event; but the owner, heedless of this stipulation, paid the contractor $10,046.68. And so in *Association* v. *Miller*, the owner disregarded a provision for weekly payments, and assumed to apply funds due the contractor in discharge of certain liens preferred against the structure. In all these cases it is plain to be seen that the security intended to be reserved for the benefit of the sureties was impaired by the act of the owner or obligee, and hence it was very properly held that the sureties had been discharged. But the anticipated payments, as it respects the first installment in the case at bar, could not have impaired the security of the sureties in the remotest degree; and, besides, all the money thus advanced was applied on account for materials furnished and used in the structure. Lyons and Jensen were therefore not discharged on account of the anticipated payments towards the first installment.

6. That the acceptance of the second bond discharged the sureties upon the first is not strenuously urged. The terms of the obligation set the question at rest. It was given as additional security, and so understood and accepted by the parties to the contract. There is some conflict in the testimony touching the matter, but we are convinced from a careful review of the same that the true understanding and agreement was as above stated.

7. It was agreed that, at any time after the fifth installment became due and payable, Brown should, at the request of Marks, cause to be deeded the lots specified in the contract. On August 29, 1893, Marks made a demand, in writing, requiring Brown to deed the same, and he refused to comply with the demand. In so far as the defendant Jensen is concerned, he cannot complain, as Brown's refusal was in pursuance of his own request made in writing the day previous. Lyons made no direct request of Brown to withhold the deed, but at the time there were liens filed against the building, and Brown was legally justified in retaining the lots until such liens were discharged. Such is the effect of the holding in *Henry* v. *Hand*, 36 Or. 492 (59 Pac. 330).

8. As it pertains to the fourth reason for the release, it is only necessary to say that from August 5 Brown had, by reason of his agreement with Marks, withheld payments and disbursed funds due Marks upon his order. At the time of Marks' abandonment of the contract, there was in Brown's hands the sum of $82.50, which Marks had not directed to be disbursed. Hence it was there by his consent. The matter touching the amount due Brown from Marks had never been adjusted, nor was there any specific requirement under the contract as to the time when it should have been adjusted—presumably, at the time of the completion of the building. Surely, there was no stipulation requiring its adjustment prior to the time when Marks quit work, and his abandonment released Brown from any further duty under the contract.

9. Neither did the transaction of October 23, 1893, have the effect of releasing Marks from his obligations under the contract. The certificate was given by Marks, and it is an acknowledgment that he had no claim against Brown ; but, on the other hand, the transaction was not intended as a settlement or relinquishment of all or any

claims by Brown against him.  If such had been the case, it is reasonable to suppose that a certificate or receipt would have passed the other way.  Marks' liabilities under the contract were not taken into consideration, and hence there could be no discharge of the sureties on that account.  The decree of the court below will be affirmed.

AFFIRMED.