WILLIAM H. RAYMOND ET AL. *v.* JAMES M. WHITNEY ET AL.

Where water-craft is seized by virtue of a warrant regularly issued under the act of February 26, 1840, " to provide for the collection of claims against steamboats and other water-crafts," etc., and the same is discharged from the custody of the sheriff and delivered to the owner, on bond being given, as authorized by the fifth section of said act, the officer making such seizure retains a lien on the water craft for the benefit of the plaintiff and sureties, and a right to reclaim the same, as against all prior creditors of the craft making subsequent seizures thereof, in order that the craft may be forthcoming, to answer the judgment to be rendered under the prior seizure.

Such judgment may, in a proceeding in chancery instituted by the plaintiff in the first seizure for the assertion and protection of his own priority by lien, be impeached for fraud and collusion between the plaintiff and the owner of the craft, in the obtaining of said judgment.

The fact that counsel for creditors making subsequent seizures appeared on the trial, and defended against the claim of the plaintiff, in the first seizure, may be competent evidence on the question of fraud and collusion in obtaining the judgment, but it is not, in law, conclusive of such question.

IN chancery. Reserved in the District Court of Lucas county.

The material facts in this case, are the following :

On the 21st day of August, 1849, Raymond, the complainant, commenced an action of indebitatus assumpsit, in the court of common pleas of Lucas county, against the canal boat " *Wave*," by name, under the water-craft law, on a claim amounting then to $660.54. The boat, her tackle, apparel and furniture, were seized on the same day, but discharged from the custody of the sheriff, by a forthcoming bond, executed by complainants Bell, Bond and Rogers, as prescribed by sec. 5, Swan's Rev. Stat. 185, and the boat was restored to the possession of Rogers, as managing owner. Subsequently, but on the same day, three other suits, for small amounts, were commenced before D. O. Morton, mayor and *ex officio* justice of the peace, and the boat was seized in each case by the city marshal, and judgments were immediately rendered against the boat. On the same day, four other suits were commenced, for small amounts, before C. I. Scott, a justice of the peace, seizures made by three different constables, and judgments immediately rendered against the boat, in all of the cases. Within the next four days, six other suits for small amounts, were commenced before Justice Scott, in which seizures were made and judgments rendered against the boat. On all of these judgments, executions were issued to the various marshals and constables, commanding a sale of the boat. Advertisements were put up, and under most of the writs, sales were to be made on the 1st day of September, 1849.

On that day, before the hour of sale, complainants Raymond, Bell, Bond and Rogers, filed their bill in chancery, in the court of common pleas, against all of those creditors who had obtained judgments before Mayor Morton and Justice Scott, (and in one case, where the creditor could not be served, the marshal, Babcock, holding the execution, was made defendant,) and obtained an injunction staying proceedings on those executions. The bill set out said judgments and executions, and also the proceedings in Raymond's suit, alleging facts bringing Raymond's suit within the boat law, and claimed that Raymond had obtained a prior lien upon the property seized, for the amount of his demand, and was first entitled to be satisfied out of the proceeds of any sale

that should be made. That upon the execution of the forthcoming bond, the property was delivered to Bell, Bond and Rogers, as the bailees of the sheriff, and to be re-delivered in discharge of their bond, to answer any judgment that might be recovered by Raymond ; that Rogers and Lozier, the owners of the boat, were insolvent, and that any proceedings tending to interfere with such re-delivery, would occasion irreparable injury to said bailees, and defeat said lien. That the property would not more than pay Raymond's claim and the costs, if sold without conflict of proceedings, and that owing to the circumstances, and to the conflict of seizures and jurisdiction, with the probable litigation about the title and proceeds, in case of sale by the marshal or constables, the property must be sacrificed, if the sale was not enjoined. That neither of the justices had authority to make distribution of the proceeds, and that none could be made except in the common pleas. The bill prayed for answers, an injunction and general relief.

At the November term, 1849, all of the defendants filed a general demurrer to the bill, and moved to dissolve the injunction, but the demurrer and motion were overruled.

At the April term, 1850, a trial was had in the action of assumpsit, on a plea of the general issue and notice, Messrs. D. O. Morton and C. F. Abbott appearing and defending, in the name of the boat, for the creditors who are defendants to Raymond's bill, and a judgment for $686 damages, was rendered in favor of Raymond. On this judgment a *vendi. expo.* issued, and the boat being restored to the sheriff by his bailees, in performance of the condition of their bond, he advertised it to be sold on the 7th of May, 1850. On the 6th of May, the defendants to Raymond's bill, (excepting Babcock, Lozier and the two Colemans,) filed their cross bill against Raymond and Rogers, and enjoined the sheriff's sale. At the June term, 1850, this injunction was dissolved, on Raymond's motion, and he had leave to proceed with his execution, the proceeds to be brought into court.

June 29th, 1850, a paper was filed, purporting to be the joint and several answer of all of the defendants to Raymond's bill, ex-

cept Babcock and Lozier, but signed and sworn to by Whitney only.

July 8th, 1850, Raymond answered the cross bill, and on the 23d of the same month, the sheriff received another *vendi*, and advertised the boat to be sold " *on Saturday, the 2d day of August next.*" (Saturday was the 3d.day of August. The printer made the mistake in setting up the sheriff's notice.)   On Saturday, the 3d day of August, the sheriff sold the property to Raymond, for $300 ; delivered it to him, with a bill of sale, and indorsed and returned the sale on the *vendi*.

Raymond went on immediately to finish, repair and re-paint the boat, believing the sale to be regular, and his title valid, and expended in that way $167.  Afterwards, and on the 2d of September, 1850, the irregularity was mentioned to him, and he, wishing to avoid complaints, immediately served a notice on all the other creditors, consenting that the boat be reädvertised, and again offered for sale, upon the condition that his expenditures, after the 3d of August, should be deemed an incumbrance on the property, for which he was to be paid.  Under this notice, the sheriff again advertised the property, and on the 16th of September, 1850, having first stated the sale to be subject to the terms of Raymond's notice, proceeded to sell the property, and struck it off to complainant, Raymond, at $751, and altered his former return, so as to conform in amount to this sale.   Complainant, Raymond, being absent, S. A. Raymond attended the sale for him, and bid off the property, and he swears that he understood at the time that the proceeds of the sale were to go into the sheriff's hands, and that his brother's repairs were to be paid for out of the proceeds.

Nov. 5th, 1850, a replication to Raymond's answer is filed.

March 21st, 1851, Rogers answers the cross bill, and the same day the original complainants reply to the answer of Whitney.

Whitney's answer admits that Rogers and Lozier built the boat, as alleged in Raymond's bill, and that Raymond did furnish materials to them, as there stated, but avers that Raymond was largely indebted to Rogers, and that was to apply on the boat.

It admits that Raymond's was the first seizure and prior lien, but claims the lien was discharged by the forthcoming bond.

No question is raised, in this answer, as to whether any items in Raymond's account are legal charges under the water-craft law.

The cross bill sets up the prior proceedings, and alleges that Raymond obtained his judgment upon no other evidence than the written admission of Rogers, and his own books, supported by the testimony of S. A. Raymond. That when Rogers and Lozier commenced to build the boat, Raymond was largely indebted to Rogers for services and money loaned, which was, by an understanding between them, to apply on the boat. That Rogers represented to Whitney and Woodruff that the boat would not owe over $150, when ready to run. That Raymond made similar representations to Hough and Mayhew, and that credit could be given with safety. That both the Raymonds, about the 1st September, 1849, said to Lundy and Woodruff, that complainant Raymond's proceedings were for the benefit of Rogers, and to protect his property from sacrifice. It further alleges that not over $150 of Raymond's judgment was due, when recovered, and that, as Rogers worked for Raymond, the whole debt must have been liquidated. That Raymond and Rogers, to defraud the other creditors, pretend that the whole judgment is due, but the contrary is charged.

Raymond and Rogers answer and deny every material allegation in the cross bill.

At the July term, 1852, of the court of common pleas, a decree was rendered confirming the last sale, and directing that Raymond's judgment be first paid out of the proceeds of the sale, and if the balance of the proceeds were not sufficient to pay the costs, that then the defendants to Raymond's bill pay the same. Further proceedings against the boat, on the Justices' judgments, were perpetually enjoined. The decree did not allow Raymond anything for his expenditures on the boat, between the two sales. Both parties appealed ; and at the April term, 1854, of the district court, the cause was reserved for decision in this court.

*Hill, Bennett, Perigo* and *Pratt,* for complainants.

*Hill & Pratt* made the following points in substance:

1. The statute clearly contemplates that the lien shall subsist, notwithstanding a bond to the sheriff may have been executed. The statute prescribes the condition of the bond to be given. Sec. 5, p. 185, Swan's Stat.; *Jones* v. *Steamboat Commerce,* 14 Ohio Rep. 408; *Stump* v. *Rogers,* 1 Ohio Rep. 533; *McConnell* v. *Scott,* 15 Ohio Rep. 401; *Hayes* v. *Ward,* 4 Johns. Ch. 123; *Kent* v. *Matthews,* 12 Leigh 574, 585; *Taylor* v. *Herriott,* 4 De Saus. 227; *West* v. *Belcher,* 5 Mumford 187; *Hinsdell* v. *Murry,* 6 Vermont 136, 150; *Agnew* v. *Bell,* 4 Watts 31, 33; *Moore* v. *Moore,* 4 Hawkins 358, 360; *Watts* v. *Kinney.*

2. The cross bill does not make a case for relief in chancery against Raymond's judgment. *Stiver* v. *Stiver,* 3 Ohio Rep. 19; *Reynolds* v. *Reynolds,* Ib. 268; *Abbott* v. *Hughes,* Ib. 278; *Spencer* v. *King,* 5 Ohio Rep. 182, 548; *Pollard* v. *Collier,* 8 Ohio Rep. 43; *Raines* v. *Scott,* 13 Ohio Rep. 107, 113; 2 Kent's Com. 119, note c, 5th ed.; *Rose* v. *Himly,* 4 Cranch 241; 7 Ib. 429; *Grant* v. *McLaughlin,* 4 Johns. Rep. 34; *Anderson* v. *Anderson,* 8 Ohio Rep. 108; *Henry* v. *Vermillion & Ashland R. R. Co.,* 17 Ohio Rep. 187; *Stevens* v. *Bank of Wooster,* 1 Ohio St. Rep. 233; *Steamboat Monarch* v. *Finley,* 10 Ohio Rep. 389.

3. The first sale passed the title to Raymond. Gwynne's Sheriff 338; *Stall* v. *McAlister,* 9 Ohio Rep. 22—24. As to the repairs, see Story's Eq. Jurisp., sec. 1237; Montagu on Lien 100; Gwynne's Sheriff 304; *Payne* v. *Cove,* 3 T. R. 148; Story on Sales, sec. 427.

4. Raymond's judgment must be paid first. *The People* v. *Mayor's Court of N. Y.,* 1 Wend. 39.

*Morton & Lee,* for defendants, made the following points in substance:

1. Raymond's lien did not continue after the bond was executed to the sheriff, and the boat discharged and delivered to the custody of the owner. It is clearly the meaning and policy of

the act, to *discharge the boat from the lien by the substitution of other security*; and after the release of the boat upon security, the owner is reinstated in the possession of his property, and the same may again be seized by other creditors, in the same manner as though no proceeding had ever before been instituted against the boat. *Steamboat Novelty* v. *Clements,* 14 Ohio Rep. 28.

2. Raymond's judgment was obtained by collusion and fraud, and may be impeached therefor.

3. The defendants in this suit are not concluded by that judgment, for they were not parties to it, and never had a day in court to resist the claim.

BRINKERHOFF, J.   The fifth section of the act referred to in the statement of the case is as follows:

" That the owner, master, steward, consignee, or other agent of such steamboat or other water-craft, may discharge the property seized, upon entering into bond to the officer taking the same, with two good and sufficient sureties, within the county where such craft may have been seized, in double the amount of the demand sworn to be due by plaintiff, agent, or attorney, conditioned that such property, or double the amount sworn to be due by plaintiff, agent, or attorney, shall be forthcoming to answer the judgment under such seizure."

It must be admitted, that this statute is, in many respects, obscure and indefinite, leaving a wide scope for judicial construction, and making, in the course of proceedings under it, frequent and large demands for its exercise.   We are free to say, we have felt the difficulties thus presented, and, after most diligent endeavors, have been embarrassed with doubts in all our attempts to arrive at conclusions satisfactory to our own minds.   But, while the legislature shall leave the act in its present obscurity, we must deal with it as best we may.

The first question presented for our determination in this case is, whether, after the seizure of the craft, and its redelivery to the owner after bond executed as provided for in the fifth section, the officer making the seizure retains, for the benefit of the plaintiff and the sureties in the bond, a lien on the craft and a right to

reclaim the same, as against prior creditors making subsequent seizures, so that the same may be " forthcoming to answer the judgment under such seizure ;" or, whether such redelivery is an absolute and complete discharge of the craft, leaving the plaintiff no remedy except on the bond taken by the officer to himself; the sureties no resource but the integrity and pecuniary responsibility of their principal; and the craft itself open and unincumbered to any subsequent seizure of a prior creditor.

The former proposition would assimilate the proceeding to that of an ordinary delivery of property to the debtor, or a third person, by an officer making an ordinary levy under an execution on an ordinary judgment. *Wadsworth* v. *Parsons*, 6 Ohio Rep. 449; *Ohio for use of Smith* v. *Fuller et al.*, 16 Ohio Rep. 545; 18 Conn. 1. The latter would render it analogous to proceedings in admiralty, under the act of Congress of March 3, 1847. We are of opinion that the former proposition embodies the true construction of the act; and that the word " discharged " in the said fifth section, implies no more than the discharge of the craft from the actual manual custody, for the time being, of the officer. And this for the following reasons:

1. The condition of the bond authorized by the said fifth section, is substantially similar to a bond authorized to be taken by an officer making an ordinary levy, and leaving the property seized in execution, in the custody of the judgment debtor; the bond alike in both cases being conditioned for the *forthcoming or delivery of the property*, and not for the payment of the debt; while the bond authorized to be taken by a marshal, under the act of Congress referred to, is conditioned for the payment of the debt; or, in the words of the act, " to abide and answer the decree of the court in such case; and such bond or stipulation shall be returned to the said court, and judgment on the same, both against the principal and sureties, may be rendered at the time of rendering the decree in the original cause." Conkling's U. S. Admiralty 446.

2. The tenth section of the act under which these proceedings were had, provides that after " judgment rendered, the owner or owners," etc., " may appeal from such judgment on en-

tering into the required bond or recognizance, as in other cases
of appeal ; and on such appeal being perfected, the officer who
may have seized such property, shall *restore* the same," etc.  Now,
" the required bond or recognizance, as in other cases of appeal,"
is conditioned for the *payment* of the debt or claim to be ad-
judged, as in cases in admiralty, and works an absolute release
in all cases of the property seized or attached—the remedy on
the appeal bond serving as the legal substitute for liens acquired
by preceding process.  And it will be observed that the word
" restore " is here used, and not the word " discharge," as in the
fifth section, and the same word is also used in the sixth section,
directing the re-delivery of the property to the owner, in case of
judgment in favor of the craft ; thus indicating either that the
legislature intended to employ the latter in a much more restrict-
ed and less comprehensive sense than the former, or else that it
was so very careless in the selection of its phraseology, as fully
to justify the application of the last reason we shall assign for the
construction we have adopted.

3. Again :   This construction seems to be necessary, in order
to harmonize the fifth section with the theory of subsequent pro-
ceedings under the act, and save them from apparent absurdity.
To illustrate :  Suppose the craft to be duly seized and dis-
charged by forthcoming bond, as in this case.  Suppose the case
proceeds to judgment, which judgment being *in rem*, is against
the craft by name, and against *it* alone, and that execution or-
dering a sale of the craft, and which is the only final remedy
known to the proceeding, issues.  Suppose, further, that the
craft is not delivered to the officer either by owner or sureties,
but remains in their custody, in the bailiwick of the officer hold-
ing the execution, and actually under his eye and within his
reach.  Now, under these circumstances, cannot the officer re-
take the craft, and proceed to expose her to sale, either for the
payment of the plaintiff's claim, or for the reïmbursement of the
sureties ?  He cannot, if the discharge under the bond was an
*absolute* discharge ; and the process in his hands, though fully
capable, as a matter of fact, of efficient execution, is, by the
construction of law, divested of all life and practical energy

whatsoever; and the plaintiff is turned over to seek, by a new suit, such remedy as he may have on a bond given to the officer. But in a proceeding in admiralty under the act of Congress, this inconsistency is avoided; as that act, as will be seen from the clause quoted, authorizes judgment on the bond, against both principals and sureties, at the same " time of rendering the decree in the original cause."

Finally. We believe that general equity, and especially the safety of innocent sureties, who are always favorite subjects of legal protection, will be best subserved by the conclusions to which we have arrived.

We are next to determine whether a judgment rendered under the first seizure, may, in a proceeding in chancery instituted by the plaintiff and sureties for the assertion and protection of their own priorities of lien, as against creditors making subsequent seizures, be impeached for fraud and collusion between the plaintiff and the owner of the craft, in the obtaining of said judgment, and with a view to defeat the remedies of other creditors. We think it may. A judgment of a court having full jurisdiction of the parties and of the subject matter, and remaining in full force, is conclusive as against parties and privies. But the defendants to this bill, and complainants in the cross-bill, were neither parties nor privies to the proceeding against the boat, and they never had a day in court. It is contended, however, that counsel for the complainants in the cross-bill, appeared in behalf of the boat on the trial in that proceeding, and that, for this reason, the judgment should conclude the complainants in the cross-bill. We are not of that opinion. The circumstance may be competent evidence on the question of fraud and collusion in obtaining the judgment, but is not, in law, conclusive of that question.

Waiving the question as to whether the facts stated in the original bill of complainants entitled them in chancery to the relief sought, we think that, as all the parties are now before the court, and as the proceedings and rights of the parties since the filing of the original bill, have become somewhat complicated, the case ought to be permitted to proceed to a final determination of their rights and claims in the premises.

But here were two sales, the plaintiff being the purchaser in both, and having, between the sales, expended money in the repair of the craft. Which sale shall stand ? and if the latter, shall the plaintiff be reïmbursed out of the proceeds of sale, for his repairs ? Inasmuch as the irregularity of the prior sale arose from no fault of the purchaser; as the repairs were made in good faith, and were in themselves proper to be made ; and especially as the last sale was an advantageous one for the owners and their creditors, having produced, after deducting the amount claimed for repairs, a larger sum than the first sale, we are of opinion that the claim for repairs ought to be allowed.

The case will be remanded to the district court for the determination of the questions of fact raised by the cross-bill, and for decree accordingly, on the principles here indicated.