EAGER *et al.* v. SEEDS *et al.*

No. 2046, Okla. T.    Opinion Filed June 24, 1908.

(96 Pac. 646.)

1.   **APPEAL AND ERROR** — Review — Findings by Trial Court — Conclusiveness — Conflicting Evidence. The evidence conflicting upon the material issues involved, the finding of fact by the trial court will not be disturbed here on review, where there was testimony reasonably tending to establish the allegations of the prevailing party.

2.   **PRINCIPAL AND SURETY**—Discharge of Surety—Disregard of Terms of Undertaking. A surety is bound only by the strict terms of his undertaking. Having assumed such burden without sharing its benefits, he necessarily has the right to prescribe the exact terms upon which he will enter into such undertaking. It is not a question whether he is harmed or benefited by a disregard of the terms of his undertaking; and, where by such terms the principals or other parties are to be paid by the obligors in certain proportion or at a certain time, when approved by the principals, and such payments are made in advance of such time or without such approval, the sureties will be discharged.

(Syllabus by the Court.)

*Error from District Court, Logan County; before John H. Burford, Judge.*

Action by W. P. Eager and others against S. Y. Seeds and another, contractors, and Julius Ward and another, sureties. Judgment for plaintiffs as against the contractors and in favor of the sureties as against plaintiffs, and plaintiffs brought error to the Supreme Court of the territory of Oklahoma, whence the cause came by virtue of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267) before the Supreme Court of the state of Oklahoma.   Affirmed.

On the 19th day of December, A. D. 1903, the plaintiffs in error, as plaintiffs, commenced an action against the defendants in error, as defendants, in the district court of Logan county, territory of Oklahoma, alleging: That on the 24th day of April,

A. D. 1903, said plaintiffs entered into a contract with the defendants, wherein it was stipulated that Seeds & Phillips should furnish all the material and labor necessary to erect and to build, and to complete in all its details, a certain three-story stone and brick business and office building in the city of Guthrie, in accordance with certain plans and specifications made a part of said contract, which was in writing, a copy of the same being attached to the petition. That thereafter, on June 1, A. D. 1903, the said parties entered into a supplemental agreement thereto, which is attached to plaintiffs' petition, wherein certain changes and modifications of said former agreement were stipulated. That on the 24th day of April, A. D. 1903, the said Seeds & Phillips, as principals, and their codefendants, Julius Ward and George Latta, as sureties, made, executed, and delivered to said plaintiffs their certain bond in writing in the sum of $10,000, wherein the said sureties undertook and agreed that the said principals should comply with their said contract in all respects, in accordance with the plans and specifications, and deliver said building to plaintiffs in good condition, with first-class material, and in a good, workmanlike manner, the first story of said building to be. so erected and completed on or before the 1st day of July, A. D. 1903, to be used as banking rooms, and the remainder of said building to be so completed on or before the 1st day of August, A. D. 1903, and to be delivered to plaintiffs with all bills and charges for labor and material used therein paid, said building at the time before mentioned to be delivered to plaintiffs free and clear of all mechanic's liens, charges, and claims of every kind whatsoever. The contract price therefor was $9,990.

Plaintiffs allege that they have duly performed all the conditions of said contract, but that the defendants under said contract and bond have wholly neglected to finish said building in accordance with their undertaking, and that the time for the completion of said building expired long before the commencement of this action. Plaintiffs further allege that there yet remains outstanding and unpaid bills and charges and mechanics'

liens in the sum of $2,900.00, which are legal charges against said building, and which plaintiffs are bound for; that the sum of $1,556.30 is a charge for lumber furnished by Julius Ward, one of the sureties and defendants herein; that the sum of $22 is a charge for labor and material by George Latta, one of the sureties and defendants in this action; that one Anderson, subcontractor, claims to be due him the sum of $244.94 for labor and material furnished on said building; that S. R. Seeds claims $118.05 for plastering said building; that the Spencer Hardware Company, of Guthrie, claims $162.50 for material which was furnished in the construction of said building; that one Chrisen claims $50.75 on account of painting said building; that the Cheatham Planing Mill has a claim of $46.91 for material, and has filed a mechanic's lien on said building; that there is a claim for plumbing in the sum of $177; and that the Arkansas Lumber Company has a claim of $419 for material used in the construction of said building, making a total sum of $2,900 claims and charges against said building due and owing for labor and material used in the construction of said building, furnished by said defendants Seeds & Phillips.

Plaintiffs further allege that they were damaged in the sum of $300 by reason of the failure of said contractors to finish the first story of said building within the time agreed upon, and the further sum of $400 on account of the failure of said contractors to complete the remainder of said building within the time stipulated in said contract; that, relying upon said contract, plaintiffs had leased said building, obligating themselves to deliver possession thereof at the times mentioned in said contract, and by reason of defendants' failure to so complete and deliver the possession of said building plaintiffs have been damaged in the sums as above mentioned. Plaintiffs allege that defendants promised and agreed in said contract to allow the plaintiffs the sum of $10 per day for every day which elapsed between the time when said building should be completed and delivered and the time when it

was completed, and that accordingly said plaintiffs have been damaged in the sum of $1,500.

In said contract defendants bound themselves to use and furnish only good material as detailed in said specifications, and to build and·construct said building in a good and substantial workmanlike manner, the first story to be built and finished for banking rooms on or before the 1st day of July, A. D. 1903, and the balance of said building to be finished and delivered to plaintiffs on or before the 1st day of August, A. D. 1903, and all of said building was to be complete and free and clear of all mechanic's liens, claims, and charges of every kind and character at the time above mentioned. The plaintiffs in said contract were to make payments to said contractors as follows, to wit: The bills for all labor, unless otherwise agreed, shall be paid each Saturday evening after work on the building has been commenced. Said Seeds & Phillips shall give or approve all orders or bills for labor on said plaintiffs, who are to pay the same and charge to the account of said contractors each Saturday evening. The said contractors on each Saturday evening are to draw an order for their own services for the number of days they labor each week, their wages not to exceed per day the highest wages paid to firstclass mechanics employed in the construction of the building, which amount, when drawn, is to be charged to said contractors. It is further stipulated that the payment of all bills for material shall be deferred until the completion of said building, unless otherwise agreed upon by and between ·both parties. All bills for material must be O. K.'d or approved by the contractors before payment, and, when paid, are to be charged to the contractors. Not to exceed 75 per cent. of the cost of labor and material used in the building is to be drawn out by the contractors before the building is completed. An estimate of the cost of material and labor used in said building may be made at any time on the request of either or both parties. No labor or material performed or furnished outside of and not used in the building shall be considered in making said estimate of cost. Should the contractors

fail or neglect to complete and finish the first floor of said building by the 1st day of July, A. D. 1903, they are to forfeit $10 per day to plaintiffs as damages, unless the delay is caused by something, or in some way, over which the contractors have no control; that is, if the contractors cannot prevent the delay. Should it be necessary to make any changes in the plans and specifications, by agreement such change shall be made at the actual cost of the material and labor, whether the cost be more or less, and the party entitled to the amount of the difference shall be credited with the same.

Thereafter, in due time, the said defendants S. Y. Seeds and J. W. Phillips, principals in said bond, filed their answer, admitting that they as partners and contractors made and entered into the contract with plaintiffs, as alleged, but denied each and all the other material allegations in plaintiffs' petition. Also in due time the defendants Julius Ward and George Latta, the sureties on said obligation, filed their amended answer, jointly and severally denying each and all the material allegations of said petition, except as therein specifically admitted; and further alleged that said Julius Ward had unpaid bills of $1,566.30 for lumber and material furnished by him that were used in the construction of said building, and that he had filed in the office of the clerk of the district court of Logan county a mechanic's lien on said building and lot to secure the payment thereof; and, further, that said George Latta had an unpaid bill for labor and material used in the construction of said building, and that he had a mechanic's lien on said building and lot to secure the payment thereof. They also admit that there are other mechanic's liens on said building and lot for material and labor used in the construction of said building. They further admit the execution of the bond and the contract, as alleged by plaintiffs. They further plead that plaintiffs ought not to be permitted to maintain their action against them, or either of them, for the reason that said contract made on the 24th day of April, A. D. 1903, between plaintiffs and said Seeds & Phillips, provides specifically, definitely, and particularly

for the payment of all bills for material used in the construction of said building as follows:

"The payment of all bills for material shall be deferred until the completion of said building, unless otherwise agreed upon by both parties. All bills for material must be O. K.'d or approved by the contractors before payment, and, when paid, are to be charged to the contractors. Not to exceed 75 per cent. of the cost of material and labor used in the building is to be drawn out by the contractors before the building is completed. An estimate of the cost of labor and material in the building may be made at any time on request of either or both parties; but no labor or material performed or furnished outside of and not used in the building shall be considered in making said estimate of cost."

Said defendants further alleged that said plaintiffs did not faithfully observe, keep, and perform this part of said contract, but disregarded and violated the same, without their consent, continuously while said building was being erected by said contractors, as follows, to wit:

"(1) Said plaintiffs did not defer the payment of all bills for material until the completion of said building, and no agreement was made at any time by and between plaintiffs and said contractors that such bills or any of them should be paid by plaintiffs before the completion of said building.

"(2) Numerous bills for material used in the construction of said building were paid for by plaintiffs before said building was completed, and without being O. K.'d or approved by said contractors either before or after payment, and such payments were charged by plaintiffs to said contractors.

"(3) Said plaintiffs made payments for labor and material used in said building largely in excess of 75 per cent. of the cost of such labor and material before said building was completed, and without any estimate having been made of the cost of the same before making such payments or any or either of them.

"(4) Said plaintiffs made several payments for brick and other material some of which had been contracted for by said contractors, and some of which was contracted for by plaintiffs, to be used in said building, before the same was actually used in

said building, and without the consent or approval of said contractors for plaintiffs to make such payments or any or either of them, and such payments were all charged to said contractors.

"(5) Said plaintiffs made one payment of $60 to Newt Anderson for brick that had been unloaded in the street near the plaintiffs' lot to be used in said building, before the same were placed or used in said building, and, without the consent of said contractors to so pay for the same, said plaintiffs made payments to said Newt Anderson for brick furnished by him for said building to the amount in all of between $4,000 and $5,000, without the consent of said contractors, and without any bills being presented to said contractors for such payments to be O. K.'d or approved by them before such payments were made, or after such payments were made.

"(6) The steel ceiling used in said building was ordered and paid for by plaintiffs, and no bill for the same was ever presented to or shown to said contractors for their approval or disapproval either before or after payment, and no consent was ever given by said contractors to so order and pay for said ceiling.

"(7) The floor tiling used in said building was ordered by said contractors through W. S. Spencer of Guthrie from a firm in Ohio, and the bill for the same was never presented to or shown to said contractors, and plaintiff paid the bill for said tiling before the same were in fact used or placed in said building, and without the consent of said contractors to so pay for said tiling, and without knowledge of said contractors as to the amount of said bill, or the cost of said tiling."

Said defendants further averred that the provisions, limitations, and safeguards particularly specified in said contract as to payments by plaintiffs for labor and material to be used in said building were deemed by said defendants material and important at the time they signed said bond in determining the risk they would incur as sureties, and they relied on plaintiffs to faithfully keep and observe the same for their own protection, as well as for the protection of these defendants as sureties.

The defendants further allege that plaintiffs not only violated said contract as to payments for material used in said building as aforesaid, but they also violated said contract by paying numerous bills for labor on said building by hired employes, with-

out receiving or asking for any bills or orders for the same from said contractors, and without the approval of the bills for labor of such employes by said contractors.

The said defendants aver that by reason of the disregard and violation of said contract by plaintiffs, as aforesaid, they are in law released and wholly discharged from any liability to plaintiffs as sureties on said bond.

For a further answer to the claim for damages alleged to have been sustained by plaintiffs for the failure of said contractors to complete said building by the time specified in the contract, the defendants allege that plaintiffs were by the terms of said contract required to excavate the basement of said building, and, owing to unusual and continued heavy rains soon after said contract was made, plaintiffs were necessarily delayed for 30 days or more in excavating the dirt from the basement, and said contractors were thereby delayed in the work of building the foundation and basement walls for said building; that it was impossible for said contractors to proceed with the work of erecting said building until the basement was excavated by plaintiffs; and that, owing to the long delay of plaintiffs, caused by wet weather and heavy rains as aforesaid, in getting said basement excavated, said contractors were delayed in their work on said building for more than thirty days, and by reason of such delay they were unable to complete said building within the time specified in said contract.

They further aver that the floor tiling was ordered from Ohio to be shipped to Guthrie by way of Kansas City in ample time to have reached Guthrie and been used in said building before the time fixed in said contract for the completion of said building in ordinary weather and railroad transportation, but that, after said order had been sent for said tiling, unusually heavy rains in Kansas and Missouri caused railroad traffic to be suspended for several weeks through Kansas City, Mo., and thereby caused said tiling to be delayed in shipment for several weeks, and until it

was too late to use the same in said building within the time specified in said contract.

The plaintiffs filed their reply, denying generally all the material allegations of said answer inconsistent with the allegations of plaintiffs' petition. Evidence was introduced on the part of the plaintiffs in support of their allegations, and also on the part of the defendants in support of the allegations made in their answer. Upon all the material issues there was a conflict in the testimony. The cause was tried by the court without the intervention of a jury, and the issues were found in favor of the plaintiffs as against the said contractors, Seeds & Phillips, and in favor of the sureties, Ward and Latta, as against the contention of the plaintiffs. This case was pending in the Supreme Court of the territory of Oklahoma at the time of the admission of the state into the Union, and by virtue of the provision of the enabling act it is now properly here for review.

*W. B. Herod,* for plaintiffs in error.
*Lawrence & Huston,* for defendants in error.

WILLIAMS, C. J. (after stating the facts as above). A jury having been waived and said cause tried by the court, and the issues found in favor of the defendants in error Ward and Latta, the sureties on said bond, there being testimony reasonably tending to support the findings of the lower court, such finding is conclusive in this court.

The plaintiffs in error, however, insisted that there was error in rendering judgment in favor of said defendants in error, and it becomes necessary to determine whether or not, as a matter of law, under the facts found, the court erred in rendering judgment in their behalf. In the case of *Board of Commissioners of Morgan County v. Branham et al.,* (C. C.) 57 Fed. 180, Baker, District Judge, says:

"It is well settled that a surety is bound only by the strict terms of his engagement; and, as he assumes the burdens of the contract without sharing in its benefits, he has the right to pre-

scribe the exact terms upon which he will enter into an obligation, and to insist upon a discharge if those terms are not observed. An innocent surety is always the subject of legal protection. *State v. Cutting,* 2 Ohio St. 1; *Raymond v. Whitney,* 5 Ohio St. 201; *Hall v. Williamson's Adm'rs,* 9 Ohio St. 17. It is not a question whether he is harmed or benefited by a disregard of the of the terms to which he has assented. *Miller v. Stewart,* 9 Wheat. (U. S.) 681, 6 L. Ed. 189; *Manufacturing Co. v. Kimmel,* 87 Ind. 560; *Post v. Losey,* 111 Ind. 74, 12 N. E. 121, 60 Am. Rep. 677. Where, by the terms of the contract, the principal is to be paid by the debtor or obligee in installments, and the payments are made in advance of the time specified in the contract, the surety will be discharged. Brandt, Sur. (Ed. 1878) § 102; Id. § 371. *Calvert v. Dock Co.,* 2 Keen, 639, is a case similar to the one at bar. One Streather contracted to build certain works for the dock company, and to furnish the materials. The company was to pay the agreed price of 52,200 pounds in installments, to wit, three-fourths of the cost of the work done to be paid for every two months, on the certificate of the company's engineer, and the residue on the completion of the contract. Walburton and Laycock became sureties upon the bond of Streather for the performance of the contract. Streather entered upon work, but failed to complete it, and finally abandoned it, and suit was instituted upon the bond. Streather had been paid, from time to time, more than three-fourths of the estimated cost of the work performed, and it was held that thereby the sureties were released. In the course of his opinion Lord Langdale, M. R., said: 'What the company did was perhaps calculated to make it easier for Streather to complete the work, if he acted with prudence and good faith; but it tlso took away that particular sort of pressure which, by the contract, was intended to be applied to him. And the company, instead of keeping themselves in the situation of debtors, having in their hands one-fourth of the value of the work done, became creditors to a large amount, without any security; and, under the circumstances, I think that their situation, with respect to Streather, was so far altered that his sureties must be considered to be discharged from their suretyship.' "

In the case of *Bragg v. Shain et al.,* 49 Cal. 131, Chief Justice Wallace, delivering the opinion of the court, in effect held that where a contractor agrees with the owner to erect for him

a building and furnish the materials, and deliver the same discharged from all liens, and by the terms of the contract the owner is to pay 75 per cent. of the contract price each month as the work progresses, and the other 25 per cent. when the work is completed, and a third person becomes surety for the contractor, if the owner, during the progress of the work, pays the contractor more than the 75 per cent., the surety is discharged from his liability.

In the case of *Simonson v. Grant*, 36 Minn. 439, 31 N. W. 861, the plaintiffs were sureties for the faithful performance by defendants of their building contract with their codefendant, Grant. Said plaintiffs also furnished materials used in the building erected in pursuance of the contract, and claimed a lien thereon in this action. Grant's objections against the enforcement of the lien rested on the claim that the engagements of plaintiffs as sureties estopped them from claiming any lien for materials furnished under the same contract. Plaintiffs replied that they had been released from the obligation of their bond before any materials were furnished by them. The building contract in that case contained a provision that the contractors would protect said Grant, and save him harmless from all claims and liens for labor and materials contracted by them on said building. The contract provided that a certain installment was to be paid when all the lumber was on the ground except siding and flooring, and the first floor laid, and the second when the building was inclosed, sheathed, shingled, and back-plastered, chimneys built, and roof painted. It further provided that so much of these payments as should be necessary to pay for materials and labor furnished should be used for that purpose, and after the first payment, and before the others were made, said contractors should furnish Grant with a written statement from the parties furnishing the materials and labor, or other satisfactory evidence that the money paid had been so used. After the payment of the first installment according to the terms of the contract, said Grant, having discovered that the greater part

thereof had not been applied as required by the terms of the contract, thereupon refused to make any further payments directly, but thereafter from time to time made payments upon their orders to divers parties who had valid claims against them, and which, if not seasonably paid, might be enforced against the building by filing liens therefor in pursuance of the statute. The trial court found " 'that the contractors did not perform the work called for by said contract in the order provided for, and the payments made by defendant Grant were made without reference to the state of the work at the time of such payments, or conditions prescribed by said contract in respect to the progress of the work, but that said Grant made only such payments as were necessary to be made to protect the house from liens aforesaid,' " and that plaintiffs had notice of such payments and of his object in making them; but it does not appear that they ever authorized or consented to any departure from the terms of the contract, or any change or modification thereof.  Mr. Justice Vanderburgh, delivering the opinion on behalf of the court, held that said sureties were released.

In the case of *Bell et al. v. Paul,* 35 Neb. 240, 52 N. W. 1110, a contractor entered into a written agreement with the owner to furnish all materials and erect for him a building in accordance with certain plans and specifications and deliver same free from all liens for labor or material; and the contract further provided that the contractor was to receive therefor a stipulated sum, payable as the work progressed, on the estimate of the architect, less 15 per cent., which was to be retained by the owner until the expiration of 90 days from the completion of the work, and then was payable only in the event that there were no liens upon the property for labor or materials supplied through the contractors. A bond was given by the contractor, with sureties, to complete the building according to the contract, and turn the same over to the owner discharged of all liens.  Payments were made to the contractor without the consent of the sureties during the progress of the work, and without estimates of the architect, and in ex-

cess of 85 per cent. of the contract price. In an action on the bond it was held that the sureties were discharged from laibility.

In the case of *Backus v. Archer,* 109 Mich. 666, 67 N. W. 913, the sureties on a contractor's bond, conditioned for the principal's faithful performance of a building contract, which provided that the consideration was to be paid to the principal at times therein specified as the work progressed, are released from all liability on the bond if payments are made before they are due by the terms of the contract.

In the case of *Cowdery v. Hahn et al.,* 105 Wis. 455, 81 N. W. 882, 76 Am. St. Rep. 923, a building contract provided for payments up to 85 per cent. of the value of the material furnished and the labor performed, and for payment of the balance of the contract price within thirty days after the contract was performed. All payments were to be made upon certificate of the architect. The contractors executed a bond with the defendants as sureties for the discharge of all liens. When work to the amount of $275 remained unperformed, the plaintiff, on the final certificate of the architect, paid the balance of the contract price; and thereafter leins of subcontractors were filed for $3,000, which plaintiff was compelled to pay, and thereby the sureties were released.

In the case of *Evans v. Graden,* 125 Mo. 72, 28 S. W. 439, payments by the owner of a building to a contractor thereon in excess of the percentage provided for in the contract, and without the consent of the sureties on the contractor's bond, releases the sureties.

In the case of *Peters v. Mackay et al.,* 20 Wash. 172, 54 Pac. 1122, a surety on the bond of a building contractor, conditioned to complete the building according to the contract, was held to be not liable thereon where the provision in said contract to the effect that the first three installments of the contract price were to be for only 75 per cent. of the value of the work done was violated by a payment on the third installment of a sum in excess of 75 per cent. of the value of the work.

There is nothing in this record to show that the plaintiffs in error did not act in the utmost good faith. It is probable that what they did was with a view, not only of conserving their own interests, but that of the contractors, and consequently that of the sureties, but it took away certain prescribed and exact terms upon which the sureties entered upon that obligation, and they had a right to insist upon a discharge if those terms were not observed. We are unable to find reversible error in the record.

The judgment of the lower court is affirmed.

All the Justices concur.