QUAPAW PUMPING & ROYALTY CO. v. CAMBLIN et al.

N . 12905—Opinion Refiled Dec. 2, 1924.

Rehearing Denied Jan. 20, 1925.

1. **Guaranty—Rights of Guarantor — Discharge for Noncompliance With Terms.**

The guarantor has a right to prescribe the exact terms upon which he will enter into the obligation and to insist upon his discharge if those terms are not observed. It is not a question whether he is harmed by a deviation to which he has not assented. He may plant himself on the technical obligation.

2. **Same—Contract for Electric Service in Mine—Extent of Guaranty.**

In this case, the plaintiff, Empire Engineering Service Company, entered into a contract with the Quapaw Pumping & Royalty Company on July 18, 1919, wherein the Empire Engineering Service Company agreed to install an electric motor in the mine of defendant, Quapaw Pumping & Royalty Com-

pany, and put it in running order for a consideration of $450 per month and 45c per h. p. after the first three months. Afterwards said motor got out of repair and Mr. Camblin, repersenting the Empire Engineering Service Company, made an examination of the motor in the mine, and offered to put it in good running order within 48 hours, if the Quapaw Pumping & Royalty Company would guarantee the open account after May 15. This the Quapaw Pumping & Royalty Company agreed to do, and furnished a satisfactory guaranty contract guaranteeing the open account after May 15, 1920. There was nothing said in said guaranty contract about guaranteeing the running account for rent. Held, that the guarantors were not liable for the rental of said motor under their guaranty contract.

### 3. Same—"Open Account."

An open account is one in respect to which nothing has occurred to bind either party by its statements on an account which is yet fully opened to be disputed. Abbt. Law. Dic. The word "open" indicates that there is something undetermined by the contract of the parties, or by the application of settled rules of law, and an account cannot be said to be open when no term of the contract remains to be settled by agreement of the parties. Held, that the rental contract included in the original contract of July 18, 1919, specifically provided for the payment of rental, and that same was not included in the guaranty contract.

### 4. Contracts — Recovery by Contractor for Unauthorized Expenses.

Where a contractor incurs expenses that are not authorized under his contract nor by the parties to be charged therewith, he is not entitled to recover for the same.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by Rex Camblin and C. W. Graber, doing business under the firm name of Empire Engineering Service Company, plaintiffs, against Quapaw Pumping & Royalty Company, a corporation, and C. H. Cleveland, D. C. DeVilliers and W. I. Bingham, defendants. There was judgment for the plaintiffs, and defendants appeal. Affirmed, conditionally.

This action involves the construction of a certain contract entered into between the plaintiffs and defendants. The contract is as follows:

"This contract made and entered into this the 18th day of July, 1919, by and between the Quapaw Pumping and Royalty Company, a corporation with office located at Quapaw, Oklahoma, as party of the first part, and the Empire Engineering Service Company of Joplin, Missouri, as the second party.

"Witnesseth: That for and in consideration of the sum of four hundred fifty dollars ($450.00) per month, payable in advance, the party of the second part agrees to rent the first party the following described electrical equipment.

"The above rental price of $450.00 per month applies to the first three months operation at which time the above rent will decrease to forty-five cents ($.45) per horse power on the operation of 200 HP and above.

"The party of the second part herein agrees to superintend the installation of all motors described in this contract and also give the first party engineering advice in the operation of the equipment.

"1—150 HP, 2200 volt, 3-phase, 25 cycle 480 RPM Central and Electric Motor complete with base, pulley and starting equipment.

"1—150 HP, 2200 volt, 3 phase, 25 cycle, 1500 RPM, Ideal Motor, complete with starting equipment.

"1—125 HP Motor, 2200 volt, 3 phase, 25 cycle, 780 RPM Wagner Motor, complete with starting equipment, rails and pulley.

"1—75 HP, 2200 volt, 3 phase, 25 cycle, 720 RPM, Westinghouse Motor complete with starting equipment, base and pulley.

"2—50 HP, 2200 volt, 3 phase, 25 cycle, 720 RPM, Westinghouse Motors, complete with bases, pulleys and starting equipment.

"The party of the first part herein agrees to maintain in good operating condition with the exception of average wear the above described electrical equipment and further agrees to deposit with the party of the second part, the amount of $200.00 to cover the drayage in return.

"The party of the first part agrees to insure the above described electrical equipment against fire loss, in the amount of $800.00 and assigned said insurance policy to the second party.

"It is further agreed that this rental contract can be canceled by first party within thirty days' notice by letter.

"Quapaw Pumping & Royalty Company,
"Per C. H. Cleveland, Prest.
"Empire Engineering & Service Co.
"By Rex Camblin, Manager.

"Signed and accepted this the 18th day of July, 1919."

The parties will be referred to as plaintiffs and defendants as they appeared in the court below. After setting out the above

contract, the petition alleged that defendants C. H. Cleveland, D. C. DeVilliers, and W. I. Bingham were liable to the plaintiffs as guarantors of the open account contracted by the Quapaw Pumping & Royalty Company with the plaintiff after May 15, 1920. A copy of said contract of guaranty is attached to plaintiffs' petition, and is as follows:

"This contract made and entered into this the 15th day of May, 1920, by and between C. H. Cleveland, D. C. DeVilliers and W. I. Bingham, all of Quapaw, Oklahoma, as party of the first part, and the Empire Engineering Company, a partnership, of Joplin, Missouri, of the second part.

"Witnesseth: That for and in consideration of the sum of_____. the receipt of which is hereby acknowledged, we the parties of the first part agree to guarantee the open account of any indebtedness contracted by the Quapaw Pumping & Royalty Company, and with the party of the second part, after and from May 15th, 1920."

           "Signed C. H. Cleveland,
           "D. C. DeVilliers,
           "W. I. Bingham,
       "Parties of the First Part.
"Empire Engineering & Service Company,
"By Rex Camblin,
   "Party of the Second Part."

Attached to plaintiffs' petition is a statement of the account which plaintiffs claim shows the balance due on the indebtedness from defendants to plaintiffs, and shows a balance due of $3,146.19. Several items of this account are contested by the defendants and will be noticed in the opinion. The account shows that there had accrued prior to May 15, the sum of $978.03, which is included in the statement, and defendants, guarantors, contest the items that go to make up this sum and contend that they are not liable for same, as they only guaranteed the open account accruing after May 15, 1920. The defendants further contend that the motor furnished by plaintiffs was defective and out of order so that it could not be operated a greater part of the time. They alleged that the consideration for executing the guaranty contract was the installing of said motor and putting it in proper running order and allege a failure of plaintiffs to do that, and that there is therefore no consideration for the repairing of said motor. The defendants further allege that the plaintiffs wholly failed, neglected, and refused to render the engineering service agreed upon, or to place said motor in working order, or repair same, or furnish a motor necessary and

sufficient for the purpose of said Quapaw Pumping & Royalty Company in de-watering said mine, and on account of the refusal to carry out its agreement, the defendants owe to plaintiffs nothing. The oral evidence of witnesses covers 187 pages, single space, of the record, and we have read all the testimony and the exhibits. So much of it is, as we think, of immaterial matter, but we have winnowed through it, and tried to get out the material part of the testimony to enable us to arrive at a conclusion, which we have done after much difficulty.

It appears that the motor at what is known as the Brinson-Kirtley mine was out of condition, and that Mr. Rex Camblin, representing the plaintiff, Empire Engineering Service Company, went to said Brinson-Kirtley mine and examined the motor, and told the defendants that he could have the motor in good running order inside of 48 hours, and that if they would guarantee the open account after May 15, he would go to work and repair the motor, and have it in running order in 48 hours. A guaranty contract was drawn up by Rex Camblin and signed by C. H. Cleveland, D. C. DeVilliers, and W. I. Bingham on the part of the Quapaw Pumping & Royalty Company, and by Rex Camblin on the part of the Empire Engineering Service Company. The contract of guarantee is above set out in this statement. This contract above set out, and this guaranty contract form the basis of the controversy between the parties in this suit, and a decision of the question raised during the trial will largely depend upon the construction of these two instruments above set out.

The motor was not repaired within 48 hours, and in fact never was repaired in such a way as it would do the work. The Empire Engineering Service Company continued to work on it from May 18th until sometime in October following. It is contended by the plaintiff that the fault of the motor to not work properly was with the defendants in not operating it properly. The defendants contend that it was not properly repaired, and that the plaintiffs either did not know how to repair it, or negligently failed to repair it properly. The defendants also contend that the plaintiffs did not give the proper engineering advice as to how to run the motor properly, and that the fault was caused by plaintiffs in not repairing it properly, and in not giving them sufficient engineering advice and instructions, as provided in said contract. The motor finally had to be taken out and a new motor installed. The defendants perhaps waived that part of

the contract where plaintiffs agreed to have it in running order in 48 hours, as they permitted the plaintiffs to continue working at it from time to time from May 18 up to sometime in October; and defendants, as we understand it, are not insisting that the plaintiffs should forfeit the entire account on account of the delay, but are contesting certain items in the account, which will be noticed in the opinion. Another contention of the parties is that they are not guarantors and are not liable for any item prior to May 15. It was also the contention of the defendants, guarantors, that they are not liable for the rent of said motor and claim that their contract of guaranty does not guarantee anything but the open account, and that the rentals are controlled by the previous contract made between plaintiffs and the Quapaw Pumping & Royalty Company and at the time the first motor was installed, long prior to May 15. It is claimed by the defendants that the balance sued for, $3,146.19, that $978.03, items accruing prior to May 15, 1920, should be deducted, and that an item of $772.57 made by plaintiff without authority, should be deducted, and that the rentals on the motor and line panels should be deducted. These will be discussed in the opinion. There was a trial before the court and jury, and defendants requested certain instructions and excepted to certain instructions given, which will be discussed hereafter. The jury returned a verdict, which is not set out in the case-made, but when the verdict was passed to the court, he instructed them that they had not followed the instructions of the court, and after pointing out certain items, he sent them back to the jury room, and they afterwards returned a verdict of $3,084.84 against the Quapaw Pumping & Royalty Company and against C. H. Cleveland, D. C. DeVilliers, and W. I. Bingham, the guarantors, in the sum of $2,614.80. A motion for new trial was made by both the Quapaw Pumping & Royalty Company and the guarantors. Both of which motions were overruled, and the defendants each gave notice of an appeal, and had the same noted on the trial docket by the clerk, and the case in due time was lodged in this court. The petition in error sets out 11 assignments of error, but we will only notice those which are discussed in the briefs and opinion.

Clyde Morsey, for plaintiff in error.

Shannon & Shannon, for defendants in error.

Opinion by MAXEY, C. This is a suit on an account, which is set out in the record, and also the plaintiffs in error's brief. This is made an exhibit to the plaintiffs' petition, and shows a balance of $3,146.19. The original contract upon which this action is based was made the 18th day of July, 1919, between plaintiffs and defendant Quapaw Pumping & Royalty Company. This contract is set out in detail, as will appear by the statement of the opinion. The Quapaw Pumping & Royalty Company was operating what is known as the Brinson-Kirtley mine, and the contract is made in relation to that mine. They were having trouble with the motor which furnished the power for dewatering the mine, and Mr. Camblin, representing the Empire Engineering Service Company of Joplin, Mo., went to the mine and made an examination on or about May 15, 1920, and told them that he could repair the motor and have it in good running order inside of 48 hours, as he had the necessary repairs in his shop at Joplin, but he required as a condition precedent to working on the motor that the Quapaw Pumping & Royalty Company guarantee the open account from and after May 15, 1920. There had a considerable balance accumulated on the account prior to that date, but he only required the open account to be guaranteed from May 15 by the guaranty contract, which was drawn by Mr. Camblin of the Empire Engineering Service Company and signed by him for that company, and signed by C. H. Cleveland, D. C. DeVilliers, and W. I. Bingham, who were officers and stockholders in the Quapaw Pumping & Royalty Company, a corporation, as guarantors. This guaranty contract is set out in the foregoing statement, and it will be observed that this guaranty contract only guarantees the open account of any indebtedness contracted by the Quapaw Pumping & Royalty Company with the Empire Engineering Service Company from May 15, 1920, and does not relate to or guarantee any part of the account that was contracted prior to that date. The plaintiffs did not repair the motor and have it in working order within the time that they agreed, to wit, 48 hours. It seems that when they examined the supplies they had on hand, they did not have the coils necessary to repair this motor and had to make them or procure them from the factory, and it was two or three weeks before they repaired the motor, and then it did not work well, and after trying it for sometime they took it out and installed another motor, and that did not work well, and Mr. Camblin, representing the Empire Engineering Service Company, went over the situation and said they would have to put in a new motor of a

different make, and asked Mr. Spafford, the superintendent of the Quapaw Pumping & Royalty Company, to give him an order to put in a new motor, or repair the one in the mine. Mr. Spafford said he did not have any authority to give orders, that they would have to get the order from the company. Camblin then asked Spafford if he would not make a suggestion to the company that they install a new motor, and after some talk Spafford agreed to do so, and wrote the following suggestion: "Would suggest that the Quapaw Pumping & Royalty Company put motor in as good condition as it was when last installed in the Kirtley shaft. G. O. Spafford." Camblin acted on this suggestion of Spafford and treated it as an order, notwithstanding the fact that Spafford had told him that he could not give an order, that he would have to get that from the company, and incurred an indebtedness of $772.57 in an effort to repair the motor already in the mine instead of putting in a new one, and this item constitutes a part of the account sued on, and is contested on the ground that it was incurred without authority from the Quapaw Pumping & Royalty Company, and that they would not have incurred that expense if they had known it was being incurred. They seemed to have taken it as a part of the work that Camblin was to do to put the motor in good running order. Another item which is contested is the rental on the motor of $1,088.84. The guarantors contend that they did not guarantee the rental account as that was contracted under the original contract of July, 1919, and they contest the payment of this item. Another item which is contested is for $145 rental on a line panel. The Quapaw Pumping & Royalty Company contend that they never agreed to pay any line panel rent, and nothing was ever said to them about any such rent, and for the first two or three months, there was no charge made for it, and it appears to have been put in there because Camblin took offense to some remark that was made by Mr. Chambers, who, as Camblin said, tried to get smart, and he just thought he would tax them with rent on the line panels; and the Quapaw Pumping & Royalty Company contest the payment of this item. Another item which is contested by the guarantors is the amount of said account which accrued prior to May 15, 1920, and amounts to $978.03. In our judgment, while the Quapaw Pumping & Royalty Company is liable for this amount, the guarantors are not liable for any part of it, because they only guaranteed the open

account from and after May 15, 1920. These four items are the principal items that are contested, and on the decision of these four items, the case will largely turn. There is one instruction requested by the defendant guarantors which was requested by them and refused by the court, which instruction reads as follows:

"The court instructs the jury that if you shall find and believe from the evidence in this cause that on or about May 18th, 1920, defendants, C. H. Cleveland, W. I. Bingham and D. C. DeVilliers, executed the guaranty contract introduced in evidence and that the consideration for the execution of said contract was the agreement and promise of plaintiff to render to defendant Quapaw Pumping & Royalty Company efficient engineering service and have the motor in the Brinson-Kirtley mine in working order within forty-eight hours from said May 18th, 1920, and if you shall further find and believe from the evidence that said plaintiff did not comply with said agreement and did not have said motor in operating order within said forty-eight hours from said date, then said defendants, C. H. Cleveland, W. L. Bingham and D. C. DeVilliers, are not liable to plaintiff on said contract of guaranty and your verdict will be for said defendants."

The defendants also saved exceptions to instructions No. 6 and No. 9 given by the court, which are as follows:

"You are instructed that the plaintiff seeks to recover a judgment against C. H. Cleveland, D. C. DeVilliers and W. I. Bingham, as guarantors, of all indebtedness created in their favor by the defendant Quapaw Pumping & Royalty Company after May 15th, 1920, and that said individual defendants contend there is a failure of consideration for their contract of guaranty by reason of which they are released therefrom; and if you find and believe from the evidence in this case that the plaintiff guaranteed to the defendants that if said individuals would guarantee the payment of the indebtedness incurred by it subsequent to May 15th, 1920, and that they would furnish engineering service and have the defective motor in the Brinson-Kirtley mine in operation within 48 hours after such guaranty was furnished, and that the said guarantors relied upon such agreement and would not have incurred liability upon such contract of guaranty but for the making of such guaranty by the plaintiff, then the guarantors would be released from liability on said contract unless you find and believe from the evidence in the case that the plaintiff substantially complied with the terms of such agreement. Provided, that if you should find and believe from the evidence in this case that the plaintiff in making such agreement, if you find such agreement was made, relied upon the statements or representations

of an agent or employe of the defendant Quapaw Pumping & Royalty Company as to the condition of the defective motor at the time of making of such agreement, and that such guarantors were advised of such fact, and you further believe that the condition of said motor at said time was not fairly and truthfully represented to the plaintiff, then the guarantors would not be released from liability upon the failure of the plaintiff to substantially perform the terms of the agreement with reference to the repair of such motor."

"You are instructed that under the evidence in this case there is no issue for your consideration as to the matter set up by the defendants concerning the right of the plaintiff to maintain this suit, nor to the question of damages by reason of the defendant being required to operate its pumps for two months longer than it says would have been required if a proper motor had been furnished by the plaintiff, and that as to the guarantors there is but the one question for you to consider and that is the question submitted under instruction No. 6."

We will now take up the four items, above set out, before passing on the instructions. We will first take up the part of the action that accrued prior to May 15. We do not think there is any question about the defendant guarantors not being liable for this account under the contract which was written by Mr. Camblin, representing the plaintiffs, for it does not mention rent but only refers to the open account after May 15, and Mr. Camblin's letter transmitting the guaranty contract to his company reads as follows: "We are enclosing herewith contract of guaranty covering all open accounts of the Quapaw Pumping & Royalty Company, dating after May 15, this year." This letter reflects what Mr. Camblin understood the guaranty contract covered. The obligation of the guarantors cannot be greater than that of the principal. Section 5136, Comp. Stat. 1921; Dunlap v. Stannard, 19 Okla. 232, 91 Pac. 845.

"The guarantor has a right to prescribe the exact terms upon which he will enter into the obligation and to insist upon his discharge if those terms are not observed. It is not a question whether he is harmed by a deviation to which he has not assented. He may plant himself on the technical obligation." 12 R. C. L., page 1081.

The guarantors' contract applies only to the open account. Open account is defined in volume 6, page 4985, of Words and Phrases, as follows:

"An open account is one in respect to which nothing has occurred to bind either party by its statements, or an account which is yet fully open to be disputed. Abb. Law Dic. The word 'open' indicates that there is something undetermined by the contract of the parties or by the application of settled rules of law, and an account cannot be said to be open when no term of the contract remains to be settled by agreement of the parties. McCamant v. Betsell, 59 Tex. 363-368."

In the case of Lamm v. Colcord, 22 Okla. 493-496, 98 Pac. 355, it is said:

"But when the meaning of the language in a contract of guaranty is ascertained and the actual operation under such construction has begun, the guarantor is entitled to the application of the strict rule of construction and cannot be held beyond the precise terms of such contract."

This case has been followed in Shuttee v. Coalgate Grain Company, 70 Okla. 6, 172 Pac. 780, 781; Eager et al. v. Seeds et al., 21 Okla. 524, 96 Pac. 646; Britain Dry Goods Company v. Yearout, 59 Kan. 684, 54 Pac. 1062; Burton v. Dewey, 4 Kan. App. 589, 46 Pac. 325; U. S. v. Hough, 103 U. S. 71, 26 (L. Ed.) 305; Dolese Brothers Company v. Chaney & Rickart, 44 Okla. 745-749, 145 Pac. 1119. Under this contract of guaranty, and the constructions placed on it by Mr. Camblin, who wrote it, we hold that the guarantors, C. H. Cleveland, D. C. DeVilliers, and W. I. Bingham, are not liable for the rental accruing after May 15.

The item of $145 rental on line panels under the same rule and authorities cited on the first proposition applies, and under the testimony that shows this item was put in there long after the guaranty contract was signed, we hold that it is an improper charge against both the Quapaw Pumping & Royalty Company and the guarantors.

The item of $772.57, we do not think should be allowed against either of the defendants, as there was absolutely no authority for incurring this item. The only pretended authority that plaintiff claims was in the suggestion of Mr. Spafford. Spafford refused to give an order, telling Camblin that he had no authority to order the motor removed or repaired, and Camblin then asked Spafford if he would make a suggestion that it ought to be done, and Spafford said "Yes", and wrote these words: "Would suggest that the Quapaw Pumping & Royalty Company put motor in as good condition as it was when last installed in Kirtley shaft. Signed Spafford." It could not be contended that that authorized Camblin to incur these items of expenses. Spafford had told him that he would have to get the order

from the company, but he did not try to procure an order from the company, but acted on this simple suggestion of Spafford's, and went on and incurred this balance of over $700, without any authority to expend that amount of money. He had no right to incur this bill, without direct authority from the Quapaw Pumping & Royalty Company, and having no authority, neither the Quapaw Pumping & Royalty Company or the guarantors are liable for this item. This leaves the item of $978.03, which is made up of the items contained in the action contracted prior to May 15. Of course the Quapaw Pumping & Royalty Company is liable for this, but under no theory of the case could the guarantors be held for this amount. The guarantors, as has been shown, have a right to stand on the strict construction of their guaranty, and as before shown this does not come within the terms of their guaranty, and as to the guarantors this item should have been disallowed. This brings us to the instructions. We will first take up the instruction requested by the plaintiffs. This instruction was drawn and offered on the theory that the contract sued on was an entire contract, and that the plaintiff having failed to fully perform according to its terms could not recover. This instruction would have been proper if the defendants had refused to go further when the plaintiffs failed to comply with it, but they permitted the plaintiffs to delay the matter, and when he did finally get the motor installed and it did not work satisfactorily, they permitted him to try to repair it, and finally permitted him to take it out and put in another one. This he would have no right to do after the expiration of 48 hours, without the consent of the defendants, and for these reasons we think the instruction requested was erroneous. As to the instructions six and nine, heretofore copied in this opinion, we are of the opinion that both of these instructions are erroneous and not sufficiently supported by the evidence. They put too great a burden on the defendants, and especially on the guarantors. Under our view of the case, there were no representations made to the plaintiffs as to what was necessary to repair the motor, either by the Quapaw Pumping & Royalty Company, or by the guarantors. The evidence shows that Spafford did not know what was the matter with it, and so stated. None of the others made any suggestion about it at all, because Camblin was an engineer and was supposed to know what was the matter with it, and how it could be repaired. He was so confident that he knew that he agreed to have it in running order within 48 hours. We do not think the suggestion of Spafford that there was something the matter with the coils amounted to anything when Camblin was an engineer, and to say that it was his duty to examine the motor, and see what was the matter with it, and he presumedly did this. If he was mistaken about what the trouble was with the motor and what it would cost to repair it, or the time it would take, it was his mistake, and he should have suffered the consequences; and instruction No 6 is erroneous for instructing the jury that if said individual defendants made statements or representations as to what was wrong with said defective motor, and the plaintiff relied upon them, and that said guarantors were advised of such fact, and that said statements were not fairly and truthfully represented to the plaintiff, then the guarantors would not be released from liability upon failure of the plaintiff to substantially perform the terms of the agreement, with reference to the repair of said motor. In our judgment there is utter lack of testimony to show that any such representations were made, and the instruction on a proposition that is not in the case was error. The ninth instruction is also erroneous because it states as to the guarantors there is but one question for you to consider, and that is the question submitted under instruction No. 6. Having held that instruction No. 6 was erroneous, we necessarily have to hold that No. 9 was erroneous. Enough has been said to show that under our views of the case the judgment of the trial court will have to be reversed and the case remanded for a new trial. However, if the plaintiff will remit the $1,088.84 rental on the pump, and the item of $145 rental on line panels, and the $978.03, the part of the account that had accrued prior to the 15th day of May, from the judgment of $2,614.80 against the guarantors, C. H. Cleveland, D. C. DeVilliers and W. I. Bingham, and remit the items of $772.57, work done for which there was no authority, from the judgment of $3,084.84, against the Quapaw Pumping & Royalty Company, within 15 days after the mandate is filed in the court below, making the judgment against the Quapaw Pumping & Royalty Company $2,312.27, and against the guarantors, C. H. Cleveland, D. C. DeVilliers and W. I. Bingham, $402.93. Upon the filing of such remittiturs the judgment will be affirmed. Otherwise, the judgment of the trial court will be reversed, and the cause remanded, with instructions to grant a new trial, and it is so ordered.

By the Court: It is so ordered.